[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Armand DeAngelis, appeals from a decision of the defendant, the Inland Wetlands Watercourses Commission of the Town of Waterbury ("IWC"), granting the defendant, General Growth Property, Inc., Brass Mill, Inc.'s ("GGP"), application to conduct activities within a watercourse in Waterbury, Connecticut.
On January 5, 1993, the IWC approved the application for a permit of the Homart Development Corporation ("Homart"), the predecessor of GGP, to conduct regulated activities on property bounded by Silver Street, Hamilton Avenue, East Main Street, CT Page 5510 Ambrose Street and Caroline Street, all in Waterbury, Connecticut. (Return of Record [ROR], Item 1, p. 75). Specifically, the IWC approved the application for the purpose of allowing GGP to obtain a special permit from the City Plan Commission which was required under Section 514-15 of the Zoning Regulations of the City of Waterbury. The approval was based upon conceptual plans submitted, but did not allow any action or regulated activities to commence without additional permit approvals. Since no actual regulated activity was being authorized, the IWC concluded that the application did not involve a significant activity and did not require a public hearing. (ROR, Item 1, p. 75).
On June 7, 1994, claiming that the conceptual plans which the IWC had approved in January of 1993 had changed, Homart sought approval of a modified conceptual plan from the IWC. After hearing testimony, the IWC rescinded the permit it had issued in 1993 and approved a new permit based upon the changes to the conceptual plan originally approved in 1993. (ROR, Item 2, p. 14). Again, approval was based upon conceptual plans submitted, but did not allow any action or regulated activities to commence without additional permit approvals. (ROR, Item 2, p. 14).
On February 2, 1996, GGP, successor to Homart, submitted an application to the IWC seeking permission to conduct a regulated activity (in connection with the development of a commercial mall on the site of the former Century Brass/Scovill Manufacturing site) in the geographic location bound by Silver Street, Hamilton Avenue, East Main Street, Ambrose Street and Caroline Street, all in Waterbury, Connecticut. (ROR, Item 7).[1] That application was deemed by the IWC to involve a significant activity and, therefore, a public hearing was held on March 12, 1996, pursuant to section 9.1 of the Waterbury Inland Wetlands Watercourses Agency Regulations ("Regulations"). (Amended Appeal, dated June 7, 1996, ¶ 7). Notice of the March 12, 1996, public hearing was published on February 27 29, 1996, and March 7 11, 1996, in the WaterburyRepublican American.[2] (ROR, Items 19-22). At that hearing testimony was heard by: Kathy Shields, Development Director of GGP Homart; David Golebiewski, Landscape Architect with TPA; David Lord, Certified Soil Scientist and Environmental Consultant; Don Ballou, Registered Professional Engineer; and David Nieman, employee of Fugro East of Northboro Massachusetts. As well, Kay Bergan and Richard D. Speck, both residents of Waterbury, addressed the IWC. (ROR, Item 4). At the end of that hearing the IWC voted unanimously to officially close the public hearing. (ROR, Item 4, p. 25). CT Page 5511
At a special meeting held on April 8, 1996, the IWC voted unanimously to modify Permit IW-10-94 to be known and binding as Permit IW-2-96 and subsequently approved that permit. Notice of the IWC's decision was published on April 20, 1996, in theWaterbury Republican American. (ROR, Item 22). On April 26, 1996, the plaintiff filed verified pleadings pursuant to General Statutes § 22a-19 (a), with the IWC, and became an intervening party to the GGP application. (Appeal, ¶ 12). The plaintiff commenced the present appeal of the IWC's granting of GGP's application by service of process on May 1, 1996.
"The procedures that govern an administrative appeal from the decision of an inland wetlands commission are, by virtue of General Statutes § 22a-43 (a) . . ." Brunswick v. Inland WetlandsCommission, 222 Conn. 541, 546, 610 A.2d 1260 (1992). It is well established that the right to appeal an administrative action is created only by statute and a party must exercise that right in accordance with the statute in order for the court to have jurisdiction. Munhall v. Inland Wetlands Commission, 221 Conn. 46,50, 602 A.2d 566 (1992).
Aggrievement:
Pleading and proof of facts that constitute aggrievement are essential prerequisites to the trial court's subject matter jurisdiction over an administrative appeal. Olsen v. InlandWetlands Commission, 6 Conn. App. 715, 718, 507 A.2d 495 (1986);Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 530,525 A.2d 940 (1987). General Statutes § 22a-43 (a) of the Inland Wetlands and Watercourses Act provides in pertinent part that "any person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive, by the commissioner, district or municipality or any person owning or occupying land which abuts any portion of land or is within a radius of ninety feet of the wetland or watercourse involved in any regulation, order, decision or action made pursuant to said sections may, within the time specified in subsection (b) of section 8-8 from the publication of such regulation, order, decision or action, appeal to the superior court."
The issue of aggrievement was tested by the defendants by virtue of their Motion to Dismiss. The court, Sullivan J, found that because the plaintiff owned land abutting the Mad River, the same river which runs through the property subject of this appeal, CT Page 5512 even though his land was approximately 3/4 to 11/2 miles from the instant property that he was nonetheless aggrieved. The court in that proceeding found that this plaintiff was aggrieved. At that hearing, Judge Sullivan stated: "the court does find from the evidence that in fact the plaintiff does own property that is within a radius of ninety feet from the watercourse, and the watercourse is in fact the river. So the court does find that there is aggrievement." (Transcript of July 16, 1996 Hearing, p. 150).
The court will accept Judge Sullivan's ruling, that the plaintiff is aggrieved, as the law of the case, and therefore find that he has standing to bring the present action. See State v.Arena, 235 Conn. 67, 80, 663 A.2d 972 (1995); Silberkleit v. MegaLife Health Ins. Co., Superior Court, judicial district of Milford, Docket No. 041247 (May 2, 1996, Curran, J.).
"In challenging an administrative agency action, the plaintiff has the burden of proof. . . . The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision. . . . In reviewing an inland wetlands agency decision made pursuant to the [Inland Wetlands and Watercourses Act], the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from CT Page 5513 being supported by substantial evidence. . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . ." (Citations omitted; internal quotation marks omitted.) Samperiv. Inland Wetlands Agency, 226 Conn. 579, 587-88, 628 A.2d 1286
(1993); See also Forsell v. Conservation Commission,43 Conn. App. 239, 243-44, 682 A.2d 595 (1996).
In his appeal, the plaintiff makes a number of claims which he asserts necessitates the court to sustaining his appeal. He vigorously argues that nowhere in the notice of the public hearing does it mention that the watercourse to be affected was the "Mad River." It is the plaintiff's position that it was incumbent on the IWC to specifically identify the watercourse in the notice of the public hearing. Since it is true that the notice of the public hearing did not mention the "Mad River" by name, the court must therefore determine whether that omission was a violation of statute and/or regulation. A second claim made by the plaintiff is that the IWC acted on an incomplete application which failed to adequately disclose other alternatives considered by the applicant, and which failed to disclose why the proposal to alter wetlands set forth in the application was chosen, as required by § 7-4 (f) of the Regulations (Appeal, ¶ 18(c) (d)). The final claim made by the plaintiff is that the IWC failed to consider alternatives less detrimental to the environment when reasonable and prudent alternatives existed. (Appeal, ¶ 18(e) (f)).
While the plaintiff in his amended appeal makes numerous claims of wrongdoing by the IWC, it is noted that he has only briefed his claim that the notice for the March 12, 1996, public hearing was insufficient. Generally, issues not briefed are considered abandoned. State v. Ramsundar, 204 Conn. 4, 16,526 A.2d 1311 (1987), cert. denied, 484 U.S. 955, 108 S.Ct. 348,98 L.Ed.2d 374 (1987); Hartford National Bank Trust Co. v. Tucker,178 Conn. 472, 475, 423 A.2d 141 (1979), U.S., cert. denied,445 U.S. 904; Ierardi v. CHRO, 15 Conn. App. 569, 585, 546 A.2d 870
(1988). "Where an assignment of error is to be pursued, it must be briefed. Any other rule would work an injustice and hardship on the adverse party." DeMilo v. West Haven, 189 Conn. 671, 682,458 A.2d 362 (1983), citing Cushing v. Salmon, 148 Conn. 631, 633,173 A.2d 543 (1961). While the court can treat the plaintiff's second and third claims as abandoned, it will nonetheless briefly address CT Page 5514 each one.
I. The public notice published by the IWC did not satisfy the requirements of General Statutes § 22a-42a (c) or Section 9-2 of the Regulations.
The plaintiff argues that the notice of the March 12, 1996, public hearing, published on February 27 29, 1996, and March 7 
11, 1996, was insufficient and did not adhere to the requirements of General Statutes § 22a-42a (c)[3], or Section 9-2[4] of the Regulations. Specifically, the plaintiff claims that the public notice did not adequately and substantially describe the nature and character of the proposal, did not adequately describe the location of the proposed activity as "the Mad River", and failed to disclose that the IWC proposed to modify existing conceptual permit IW-10-94.
There is nothing in the language of either General Statutes § 22a-42a or Section 9-2 of the Waterbury Regulations which specifically details the information which must be included in a notice of public hearing, they merely state that "[n]otice of the hearing shall be published . . ." If the legislature felt that it was essential for the notice to contain specific information, including the name of the watercourse as the plaintiff argues, then of course the legislature could have made that a requirement. The legislature, however, did not. In cases where the adequacy of a public notice of a municipal public hearing has been questioned, our courts have determined what information must be included in a public notice so as to fairly apprise interested parties of a scheduled public hearing. The majority of the case law addressing this issue pertains to the notice provisions contained in General Statutes § 8-3[5] which are similar to the notice requirements of General Statutes § 22a-43a (c). Because both statutes deal with the duty of a local land use agency to notify the general public of public hearings scheduled to consider changes in land use, and since they are similarly worded, the court can look at the precedent that has evolved from 8-3 for guidance. Peters v.Environmental Protection Board, 25 Conn. App. 164, 168,593 A.2d 975 (1991).
Our Appellate court has held that the purpose of notice is to inform the public of proposed action so that the public can prepare and participate in the hearing and that the notice cannot be misleading. R.B. Kent Sons, Inc. v. Planning Commission21 Conn. App. 370, 378, 573 A.2d 760 (1990). Public notice, however, "need not be exact." Id. The notice here adequately described the area CT Page 5515 within which the proposed regulated activity was to occur by listing the streets which border the area, "Hamilton Avenue, Silver Street, Ambrose Street, Caroline Street and East Main Street, Waterbury, CT." The notice published on Feb 17 and March 7 stated that the hearing was scheduled on Tuesday, March 12, and gave the time and location. It referred to the maps and notified the public that the permit application was on file at the Inlands Wetlands Office. In addition, it gave the address of the Inland Wetlands Office and the hours that the office was open to the public. The court finds that this notice was certainly adequate to apprise the public of the hearing, the nature of the hearing, the specific area affected by the hearing, the time and place of the hearing, as well as the location of the application and where and when it could be examined. The notice was not misleading and certainly gave any interested party an opportunity to be fully informed of the particulars of the application, including the name of the watercourse that existed within the affected area, should they so desire. The court does not find that the name of the watercourse was required nor was its absence misleading.
In addressing the issue of adequate prehearing notice our appellate court in R.B. Kent Sons, Inc. v. Planning Commission,
supra, 21 Conn. App. 379, ruled that notice which described the property in question as "a proposed 30 lot subdivision of approximately 35.42 acres of land at the southern end of Eagle Ridge Drive and Partridge Hollow Road. . . ." adequately apprised the public of the location of the property involved in the resubdivision application. Id., 379. The court went on to comment on both the prehearing and posthearing notice and said:
 These notices adequately apprised the public of the location of the property involved in the resubdivision application, and gave adequate notice to interested parties of the commission's decision. Although the prehearing notice did not refer specifically either to Section B-3R or Section B-2A. it properly described the general area and approximate size of the proposed resubdivision, and the reference to the plan and related materials on file was adequate to permit any member of the public to determine more precisely the specific parcels in involved. Thus, it cannot reasonably be said that one would have been misled into believing CT Page 5516 that Section B-2A was not involved in any way.
Id., 379.
As stated, the court finds that all of the pertinent information was given to the public in the prehearing notice. The plaintiff's argument that the identification of the area of the proposed activity was inadequate is not persuasive. The notice identified the area of the proposed activity by listing the streets that envelop the property. Given that there was no single address for such a large parcel of land, to describe the area in any other manner could have caused confusion or been misleading to the public. See Botticello v. Planning and Zoning Commission, Superior Court, judicial district of Hartford, Docket No. 510897 (March 31, 1995, Handy, J.) (description of property in question by the roads surrounding it, where no single address exists, acceptable for purposes of public notice). As well, the notice identified the name of the project as the Brass Mill Center and Brass Mill Commons and indicated that if any further information was needed that the Inland Wetlands Watercourses Agency could be contacted.
While the notice did not include detailed information regarding the proposed activity, or make mention of the Mad River or the previous 1994 application specifically, it did indicate that the permit application was available for inspection and/or copying in the Office of the Inland Wetlands Watercourses Agency. "[N]otice need not describe the proposed action with exactitude."Cocivi v. Planning Zoning Commission, 20 Conn. App. 705, 708,570 A.2d 226 (1990), cert. denied, 214 Conn. 808, 573 A.2d 319 (1990). Although a notice may not be misleading, it need not be exact and a public filing of the plan is relevant to the determination of the adequacy of the notice. (Citation omitted.) R.B. Kent Sons, Inc.v. Planning Commission, supra, 21 Conn. App. 378, citing Shrobar v.Jensen, 158 Conn. 202, 207. 257 A.2d 806 (1969). The application referenced in the notice contained the specific details of the proposed project including maps, surveys, reports and plans. It allowed interested persons meaningful participation in the public hearing. See Woodburn v. Conservation Commission,37 Conn. App. 166, 178, 655 A.2d 764 (1995) (notice containing the names of the applicants, the exact location of the proposed activity, the proper date and time of the public hearing, as well as indicating that data concerning the details of the application were available in the land use office, found to meet the statutory notice requirements); see also R.B. Kent Sons, Inc. v. PlanningCommission, supra, 21 Conn. App. 379; Botticello v. Planning andCT Page 5517Zoning Commission, supra, Superior Court, Docket No. 510897. "Anyone interested in the precise action sought could have consulted [the application] showing all the details of the proposed changes which the defendant had filed several weeks prior to the hearing, in the office of the [Inland Wetlands Watercourses Agency]." Shrobar v. Jensen, supra, 158 Conn. 208. "A notice is proper only if it fairly and sufficiently apprises the public of the action proposed, making possible intelligent preparation for participation in the hearing." Cocivi v. Planning ZoningCommission, supra, 20 Conn. App. 708. The public notice provided by the IWC regarding the March 12, 1996, public hearing fairly and sufficiently apprised the public of the action proposed, making possible intelligent preparation for participation in the hearing.
In support of his position that the prehearing notice was inadequate the plaintiff relies on Peters v. EnvironmentalProtection Board, supra, 25 Conn. App. 164. The prehearing notice in that case read: "The Stamford Environmental Protection Board . . . will hold a public hearing to consider information relevant to Application #8843. Transcon Builders Inc, for activities on Stillwater Rd. Id 167." The court in that case found the notice to be inadequate primarily because it referred to the subject property by street name only, even though the applicant had considered another site on the same street. In the instant case the area was adequately described within five streets, and the project was identified as "Brass Mill Center and Brass Mill Commons."
In the present case the notice was not misleading or inadequate. The court finds that the notice of the public hearing provided by the IWC satisfied the requirements of both General Statutes § 22a-42a (c) and Section 9-2 of the Regulations.
II. The IWC acted on an incomplete application which failed to adequately disclose other alternatives considered by the applicant and which failed to disclose why the proposal to alter wetlands set forth in the application was chosen, as required by § 7-4 (f) of the Regulations of the Waterbury Inland Wetlands Watercourses Commission.
Section 7.4(f) of the Waterbury Inland Wetlands 
Watercourses Agency Regulations states:
7.4 All applications shall include the following information in writing: CT Page 5518
 f. Alternatives considered by the applicant and why the proposal to alter wetlands set forth in the application was chosen.
While the IWC has the discretion to deny an incomplete application; T. Tondro, Connecticut Land Use Regulations (2d Ed. 1992) Ch. 7, pp. 431-433; the rule is that a special permit application and site plan must be in substantial compliance with the applicable regulations. See e.g. Michel v. Planning ZoningCommission, 28 Conn. App. 314, 324, 612 A.2d 778 (1992), cert. denied, 223 Conn. 923, 614 A.2d 824 (1992). Substantial compliance with a statute or regulation is such compliance with the essential requirements of the statute or regulation as is sufficient to assure its objectives. What constitutes a substantial compliance is a matter depending on the facts of each particular case.Mailloux v. Planning Zoning Commission, Superior Court, judicial district of Fairfield, Docket No. 318723 (December 21, 1995, Levin, J.); Paige v. Planning Zoning Commission, Superior Court, judicial district of Bridgeport, Docket No. 289197 (January 14, 1993, Levin, J.); Witt v. Planning Zoning Commission, Superior Court, judicial district of Hartford, Docket No. 364158 (November 13, 1990, Mulcahy, J.).
In the instant matter the court finds the IWC was not only in substantial compliance with Section 7.4 of the Regulations by accepting and considering GGP's application, but that it was in full compliance with that regulation. Even a cursory search through the application submitted to the IWC by GGP supports such a finding. In the Application for Water Diversion Permit for Brass Mill Center submitted to the State of Connecticut DEP Inland Water Resources Division dated January 23, 1995, and the Application of Department of Army Permit for Brass Mill Center dated June 22, 1994, both parts of the application submitted to the IWC, GGP outlines in great detail other locations considered for the proposed project. Specifically, GGP considered three separate sites: a Watertown site; a Waterbury/Naugatuck site; and ultimately the Scovill/Century Brass site. The first site considered by GGP and its predecessor Homart was the Watertown site. Homart spent millions of dollars on option payments, engineering, architectural and other consultant fees, and legal expenses in evaluating that site. Ultimately, the location was rejected due to difficulty in obtaining approval from local agencies and due to the fact that the site had substantial wetlands, some of which would have had to have been filled in to enable the construction of the mall. The second site considered was the Waterbury/Naugatuck Site. After completion CT Page 5519 of a series of schematic site plans, grading plans, soil investigation, and wetlands investigations, it was determined that site development costs were not appropriate and would not allow the project to be developed in a feasible manner. The third, and ultimately final site considered was the Scovill/Century Brass site. (ROR, Item 13, Appendix 5; ROR, Item 15, pp. 7-10).
The Application of Department of Army Permit for Brass Mill Center dated June 22, 1994, a part of the application submitted to the IWC, GGP outlined the reasons why it settled on the Scovill/Century Brass site. Among the reasons listed were: (1) the site had an excellent location; (2) the site had high visual exposure to a large number of potential shoppers; (3) the site had an adequate size and reasonable ownership situation for land assembly; (4) the site was available for purchase; (5) there were positive and cooperative local and state attitudes toward economic development; (6) the location was fully served by utilities with adequate capacity to absorb additional development; (7) there was potential for improved local street and interstate access; (8) there were reasonable expectations for local zoning approval; (9) the project was consistent with state, regional and local economic development objectives of revitalization of the Waterbury CBD; and (10) it was an opportunity to achieve environmental clean-up of an area with major development potential, that is currently in a state of disrepair and deterioration, with minimal wetland and natural resource impact. (ROR, Item 15, p. 11).
"[W]hen reviewing the actions of the Commission to determine if its findings complied with the standards set out in the regulations, we are not compelled to indulge in a microscopic search for technical infirmities . . . The determination of what the public interest requires is in the discretion of the Commission." McCrann v. Planning Zoning Commission, 161 Conn. 65,71, 282 A.2d 900 (1971). "Courts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their actions." (Citations omitted; internal quotation marks omitted.) Samperi v. Inland Wetlands Agency, supra, 226 Conn. 596. In the present case, it is indisputable that there is listed within the application materials alternatives considered by the applicant as well as a listing of the reasons why the present site was chosen. It is clear to the court that the application fully complies with the regulations, specifically section 7.4, and that therefore the IWC did not abuse its discretion in accepting and considering GGP's application. CT Page 5520
III. The IWC failed to consider alternatives less detrimental to the environment, when reasonable and prudent alternatives existed.
"In challenging an administrative agency action, the plaintiff has the burden of proof. The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision." (Citations omitted.)Samperi v. Inland Wetlands Agency, supra, 226 Conn. 587. It is clear from the record and pleadings that the plaintiff has failed to establish such a lack of evidence within the record. After raising claims that the IWC failed to consider less environmentally harmful alternatives in his amended appeal, the plaintiff failed to brief any such issue for the court. He has not offered any reasonable and prudent alternatives for the court to consider, nor has he shown why the defendant's application is lacking. Nevertheless the court will search the record for the basis of the agency's action.
The failure of an inland wetlands commission to state on record a finding of no feasible and prudent alternative is not an automatic grounds for reversal. "As long as a search of the record reveals the basis for the agency's decision consistent with the substantial evidence standard . . . the reviewing court must infer that the local wetlands agency made a finding that the applicant's alternative was the feasible and prudent alternative." Id., 595-96;Woodburn v. Conservation Commission, supra, 37 Conn. App. 173. "[F]or a wetland permit to issue, the local inland wetlands agency must determine that the alternative presented by the applicant is not only sound from an engineering standpoint but is also economically reasonable in light of the social benefits derived from the activity. An alternative will be deemed to be a feasible and prudent alternative only if it meets both criteria." Samperi v.Inland Wetlands Agency, supra, 226 Conn. 596. ""The legislature, in effect, has placed the initial and principal responsibility for striking the balance between economic activities and preservation of wetlands in the hands of the local authorities." Samperi v.Inland Wetlands Agency, supra, 226 Conn. 592. In searching the record, the court is mindful that it "must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in CT Page 5521 their actions. This cautionary advice is especially apt whenever the court is reviewing a decision of a local commission composed of lay persons." (Citations omitted; internal quotation marks omitted.) Samperi v. Inland Wetlands Agency, supra, 226 Conn. 596.
In addition to the two other locations considered and rejected by GGP, which were outlined supra, there were numerous changes made to the original Scovill/Century Brass site in response to environmental concerns raised by various parties. The original plan submitted in 1993 was changed and a new plan was submitted in 1994. The 1994 plan did away with a triple box culvert going from Hamilton Ave. to Union Street and instead left that area open to allow a right of passage and the creation of a low flow channel for fish passage. The 1994 plan also replaced the expanding of approximately 1,100 feet of river with the relocation and leaving open to daylight and/or natural conditions of a portion of the river. Again, this was done to encourage fish and organism cultivation within the river. Also added in the 1994 application was an off site mitigation package including embankment planting, bolder placement within the river, cleaning up of debris, and the general cleanup of a couple thousand feet of river. Such mitigation was included in an attempt to produce less of an impact on the environment than the original proposal. In creating such a plan the defendant worked with the City of Waterbury and the Department of Environmental Protection, Inland Water Resource, Fisheries and Hazardous Waste Divisions. Improvements contained within the plan include provisions to provide fish passage at locations with grade changes and fish habitat enhancement activities. (ROR, Item 2, p. 9; ROR, Item 12, Appendix 1). As engineer David Golebiewski explained, the plan changes were meant to "fix the river so that it won't be looked at the way it has been looked at historically, as an obstacle", but rather were meant to "have a positive impact on the site." (ROR, Item 2, p. 12). Simply put, the record indicates that presently there is very little fish or organic life in the river. The 1996 proposal includes the provision of physical structures which would help to make it possible for fish life and supporting organisms to thrive. (ROR, Item 3, PP. 25-28). In addition, the record indicates that a minimum of 10 distinctly different mall configurations varying in size, location, and orientation were evaluated by GGP to best minimize impacts to the Mad River, before the final plan submitted was decided on. (ROR, Item 13, Appendix 5; ROR, Item 15, p. 10).
The IWC is not required to explicitly consider each proposed alternative and explicitly state that all other alternatives are CT Page 5522 not feasible and prudent. Samperi v. Inland Wetlands Agency, supra,226 Conn. 589-90. The purpose of the Inland Wetlands and Watercourses Act is not to assure that there are no changes to existing inland wetlands. Rather, "[i]t is . . . the purpose of [the Inland Wetlands and Watercourses Act] to protect the citizens of the state . . . by providing an orderly process to balance the need for economic growth of the state and the use of its land with the need to protect its environment and ecology . . ." General Statutes § 22a-36. The present record is replete with alternatives that were considered, and changes that were made, to the original plan in attempts to minimize the impact on natural resources in the area. There is nothing within the record and indeed nothing that has been proposed by the plaintiff that is a feasible and prudent alternative to the present plan. The court finds that, contrary to having a detrimental impact on the environment in and around the Mad River, there is substantial evidence showing that the proposed plan will have a beneficial impact on the environment. Therefore, the court finds that there is substantial evidence within the record to support the finding that the IWC considered alternative plans for the project and found that there were no other prudent and feasible alternatives available. See Id., 592-93.
For the reasons set forth above, the court will dismiss the plaintiff's appeal.
PELLEGRINO, J.