R. B. KENT & SON, INC. *v.* PLANNING COMMISSION OF THE TOWN OF LEDYARD ET AL.

RICHARD C. HALL ET AL. *v.* PLANNING COMMISSION OF THE TOWN OF LEDYARD ET AL.

DONNA WORST ET AL. *v.* PLANNING COMMISSION OF THE TOWN OF LEDYARD ET AL.
(7769)
(7777)

BORDEN, O'CONNELL and FOTI, Js.

Argued January 17—decision released May 1, 1990

*Thomas B. Wilson,* town attorney, for the appellant-appellee (named defendant).

*Peter S. Gianacoplos,* for the appellants-appellees (defendant Harry L. Morgan et al.).

*Frank N. Eppinger,* with whom, on the brief, was *Mark W. Oberlatz,* for the appellee (plaintiff in the first case).

*James T. Haviland II,* for the appellees (plaintiffs in the third case).

*Francis J. Pavetti,* with whom, on the brief, was *George C. Heck,* for the appellees-appellants (plaintiffs in the second case).

BORDEN, J. This is a combined appeal by the defendants[1] from the judgments of the trial court sustaining the zoning appeal of the plaintiffs.[2] That appeal

---

[1] The defendants are the named defendant, Harry L. Morgan and Christy Hill Builders, Inc.

[2] The plaintiffs are R. B. Kent & Son, Inc./RVE Properties, Richard C. Hall, David C. Hall, Donna Worst, Victor Worst and Aqua Sports, Inc.

challenged the approval by the named defendant, the Ledyard planning commission (commission), of a resubdivision application filed by the defendant applicant, Harry L. Morgan. The defendants claim that the trial court erred in concluding (1) that the drainage plan of the proposed resubdivision did not comply with the town's drainage ordinance, and (2) that the proposed resubdivision plan did not comply with the flood control provisions of the town's subdivision regulations.[3] We find error.

Certain facts are undisputed. Morgan filed an application with the commission for approval of a resubdivision plan for an approximately thirty-five acre parcel of land in Ledyard. After more than nine hours of public hearings, the commission granted the application, subject to certain conditions not relevant to this appeal, and issued a lengthy and detailed written statement of its findings and the reasons for its action.

The plaintiffs appealed to the trial court. The court, sustaining their appeal, concluded (1) that the plan did not comply with § 5-3A of the town subdivision regulations and § 4 of the town's drainage ordinance, and (2) that the plan did not comply with §§ 3-1, 5-3 and 4-4 of the subdivision regulations regarding flood con-

[3] The plaintiffs Richard C. Hall and David C. Hall also have cross appealed, raising two claims of error by the court: (1) the published notices of the resubdivision hearing were inadequate; and (2) the commission should have required Morgan to obtain certain drainage easements. The record discloses, however, that no certification to cross appeal was sought or granted. Thus, the cross appeal must be dismissed, because certification by this court in a zoning case is a jurisdictional requirement for either an appeal or a cross appeal. See General Statutes § 8-28; *Ingersoll* v. *Planning & Zoning Commission*, 194 Conn. 277, 278, 479 A.2d 1207 (1984). We consider, nonetheless, the Halls' claim regarding the notices of the resubdivision hearing, not as a ground of a cross appeal, but as an alternate ground on which the judgment of the court may be sustained. See Practice Book § 4013 (a) (1). In view of our conclusions on the defendants' claim of error, however, we need not consider the Halls' claims regarding the necessity for drainage easements.

trol measures. The court, however, rejected the plaintiffs' claim that the published notices regarding the hearing were inadequate. Upon the granting of certification, this appeal followed.

I

The defendants first claim that the court erred in concluding that the resubdivision plan did not comply with the subdivision regulation and drainage ordinance regarding storm water runoff. We agree.

It is axiomatic that a planning commission, in passing on a resubdivision application, acts in an administrative capacity and is limited to determining whether the plan complies with the applicable regulations. *Reed* v. *Planning & Zoning Commission,* 208 Conn. 431, 433, 544 A.2d 1213 (1988); *Westport* v. *Norwalk,* 167 Conn. 151, 155, 355 A.2d 25 (1974); *Gagnon* v. *Municipal Planning Commission,* 10 Conn. App. 54, 57, 521 A.2d 589, cert. denied, 203 Conn. 807, 525 A.2d 521 (1987). It is equally axiomatic that the trial court, in reviewing the action of a planning commission regarding a resubdivision application, may not substitute its judgment on the facts for that of the planning commission. *Oakwood Development Corporation* v. *Zoning Board of Appeals,* 20 Conn. App. 458, 460, 567 A.2d 1260 (1990). The conclusions of the commission must stand if even one of the stated reasons is reasonably supported by the record. Id., 460–61.

Section 5-3A of the town's subdivision regulations provides in pertinent part: "All drainage control measures shall be provided in accordance with the requirements of the Town of Ledyard Drainage Ordinance, where applicable . . . ." Section 4 of the drainage ordinance provides in pertinent part: "For all development regulated by this ordinance, a stormwater drainage system shall be designed so that the rate of runoff flow leaving the property for which the development is proposed shall not exceed or be substantially lower

than the rate of storm water runoff which occurred prior to development." This ordinance mandates that the *rate* of storm water runoff from the property, that is, the runoff measured in cubic feet per second, must not exceed the rate of runoff occurring prior to development. It does not address the increase in the *amount* of storm water runoff occurring as a result of the proposed development.

The commission found that, although the amount of storm water runoff would increase as the result of the proposed resubdivision, because of the design of the plan's storm water management system the rate of runoff would not increase. The commission found that the plan complied with the drainage ordinance. There was ample evidence in the record to support its finding, including a letter from the town's public works director, and testimony from both an independent engineering firm associated with the town engineer and from Morgan's engineer.

The trial court found, and the plaintiffs argue on appeal, in response to the defendants' claim, that the commission's findings were flawed because of certain calculations of storm water runoff from a detention pond that was part of the storm water management system. We disagree. The commission received into evidence an exhibit presenting the results of a computer simulation in which 240 separate calculations based on various weather scenarios were used to determine the estimated runoff rates before and after the proposed development. Of these 240 calculations, only four indicated a minor increase in the runoff rate after development. On the basis of that evidence, the commission found that "the release rate from the detention pond very slightly exceeds the calculated release rate prior to development, but the Commission feels that the difference is within the tolerance for accuracy in the engineering calculations." This evidence and the com-

mission's findings based thereon do not support the plaintiffs' argument.[4]

The commission found that the higher release rate was within engineering accuracy tolerance. There was evidence to support that interpretation of the calculations. Thus, the commission justifiably viewed those four arguably unacceptable calculations as consistent with the other 236 acceptable calculations. This evidence, therefore, cannot be considered to vitiate the other substantial evidence relied on by the commission to find that the proposed subdivision would not increase the runoff rate from the property to be developed. At most, the four calculations in question can be said to present a "debatable [question] of fact which [was] within the commission's province to resolve." *Westport* v. *Norwalk,* supra, 161.

## II

The defendants next claim that the court erred in concluding that the resubdivision plan did not comply with §§ 3-1, 5-3 and 4-4 of the subdivision regulations regarding flood control measures. We agree.

Section 3-1 provides in pertinent part: "Land of such character that it cannot be used safely for building purposes because of . . . aggravation of flood . . . hazard . . . shall not be plotted for human occupancy until appropriate measures have been taken by the subdivider to ·eliminate such hazards." Section 5-3A provides in pertinent part: "No subdivision shall be laid

---

[4] Morgan argues that the computer calculations involved projected water release rates from the detention pond, and thus did not indicate "the rate of runoff flow leaving the property for which the development is proposed," as required by § 4 of the drainage ordinance. At first blush, this argument has some appeal because the detention pond was to be located, not on the property to be resubdivided, but immediately adjacent thereto on an open space lot of another previously approved subdivision. It is clear, however, that because the detention pond was an integral part of the storm water management system, the commission reasonably considered it as falling within the purpose of the drainage ordinance. We do likewise.

out in a manner which will obstruct or prevent the efficient drainage of the land or surrounding lands or cause flooding in downstream areas. Drainage easements shall be required where necessary." Section 4-4 provides in pertinent part: "The Commission shall require that any proposed subdivision is designed consistent with the need to minimize flood damage. When a subdivision is proposed for land subject to flooding, the Commission shall require written confirmation from the Building Official that utilities, water and sanitary sewer systems are located or designed so as to minimize or eliminate flood damage or infiltration. Adequate drainage systems shall be provided to reduce exposure to flood hazards."

These regulations, read together, implicitly recognize that a proposed development may create some additional water runoff, and that a balance must be struck between development and the need to maintain flood control. Under these regulations, the commission is required to evaluate the likely flood effects, if any, of a proposed subdivision by reaching factual conclusions concerning whether appropriate measures for protective flood control have been taken, whether the subdivision design is consistent with the need to minimize flood damage, whether any safety risk due to aggravation of flood hazard has been eliminated, and whether the subdivision plan has minimized the risk of flood damage or infiltration.

In this case, the commission made several specific findings in arriving at these factual conclusions. With respect to the plaintiffs Donna Worst, Victor Worst and R. B. Kent & Son, Inc., it found that in the event of exceptional storms their lands would be flooded irrespective of the proposed development. With regard to the plaintiff Richard C. Hall, it found that the flooding on his property would not be substantially increased. The commission also found that an additional volume of water runoff from the resubdivision,

"released at a controlled rate, will prolong the time of peak flooding for a very minimal and mathematically insignificant period of time," that the resubdivision "complied with all town subdivision regulations and ordinances designed to minimize the impact of storm-water runoff on downstream properties," and that the subdivision "will not cause any substantial damage downstream." Here, where the record amply supports these findings, the court may not substitute its judgment for that of the commission. See *Oakwood Development Corporation* v. *Zoning Board of Appeals,* supra, 460.

### III

We now turn to the alternate ground to affirm the judgment of the trial court raised by the plaintiffs Richard C. Hall and David C. Hall; see footnote 3, supra; namely, that the prehearing and postapproval published notices were invalid. The Halls do not claim that the published notices were too general. Rather, they claim that the notices were misleading in their specificity, and thus were legally inadequate under the authority of *Welles* v. *East Windsor,* 185 Conn. 556, 441 A.2d 174 (1981).

The basis of the Halls' claim is that a storm water diffuser, which is part of the storm water drainage system, was to be located on an open space outside of, but immediately adjacent to, the parcel to be subdivided. That lot was part of a previously approved subdivision known as "Section B-2A." The 35.4212 acre area that was the subject of the present resubdivision application was known as "Section B-3R." In essence, the Halls' argument is that the prehearing notice limited the commission's authority to Section B-3R, that neither the prehearing nor the postapproval notice referred to Section B-2A, and that, therefore, the commission was without authority to consider that part of the subdivision plan involving the storm water diffuser located in Section B-2A. This argument is without merit.

Adequate statutory prehearing notice is a jurisdictional prerequisite to a resubdivision hearing. *Cocivi* v. *Plan & Zoning Commission,* 20 Conn. App. 705, 707, 570 A.2d 226 (1990). Adequate posthearing notice is mandatory. *Akin* v. *Norwalk,* 163 Conn. 68, 301 A.2d 258 (1972). The purpose of the statutory public prehearing notice is fairly and sufficiently to apprise the public of the proposed action, so as to enable intelligent preparation for participation in the hearing. *Cocivi* v. *Plan & Zoning Commission,* supra, 708. Although the notice may not be misleading, it need not be exact; id.; and a public filing of the plan is relevant to the determination of the adequacy of the notice. *Shrobar* v. *Jensen,* 158 Conn. 202, 207–208, 257 A.2d 806 (1969); *Passero* v. *Zoning Commission,* 155 Conn. 511, 514–15, 235 A.2d 660, cert. denied, 390 U.S. 1004, 88 S. Ct. 1248, 20 L. Ed. 2d 104 (1967). The purposes of the statutory postapproval publication are to give notice to interested parties of the decision and to commence the start of the appeal period. *Akin* v. *Norwalk,* supra, 73. Gauged by these principles, both notices were adequate in this case.

The particular parcel in this case, Section B-3R, which was part of a large subdivision that was being developed in sections by resubdivision, was bounded on the north by Section B-2A. Both Section B-3R and Section B-2A are bounded by Eagle Ridge Drive. The prehearing notice described the property involved in the application as "a proposed 30 lot subdivision of approximately 35.42 acres of land at the southern end of Eagle Ridge Drive and Partridge Hollow Road . . . ." It stated that "a copy of the proposed plan and related application materials is on file in the Planning Office, Town Hall."

The postapproval notice was even more specific. It stated that the commission had "approved Subdivision Application # 252 Pheasant Run, Section B-3R Resub-

division," and that the "approved resubdivision is located at the south end of Eagle Ridge Drive and Partridge Hollow Road and includes 28 building lots, open space, roads and related storm drainage. A copy of the approved plan is on file in the Planning Office, Town Hall . . . ."

These notices adequately apprised the public of the location of the property involved in the resubdivision application, and gave adequate notice to interested parties of the commission's decision. Although the prehearing notice did not refer specifically either to Section B-3R or Section B-2A, it properly described the general area and approximate size of the proposed resubdivision, and the reference to the plan and related materials on file was adequate to permit any member of the public to determine more precisely the specific parcels involved. Thus, it cannot reasonably be said that one would have been misled into believing that Section B-2A was not involved in any way.

*Welles* v. *East Windsor,* supra, on which the plaintiffs rely, is distinguishable. In *Welles,* unlike the present case, the notice for a town meeting to consider a proposed town health and safety complex was limited to a particular location, and no site plan was available or referenced. Id., 558. After the town approved the location of the complex in accordance with the published notice, the town decided to locate it approximately 500 feet from the originally approved location, such that it fronted on a different street from that stated in the notice. No such egregious facts are present here.

On the appeals to this court, there is error, the judgments are set aside, and the cases are remanded with direction to render judgments dismissing the appeals.

The cross appeal is dismissed.

In this opinion the other judges concurred.