[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Warren K. Field, appeals from the decision of the defendant, the Milford Planning and Zoning Board (board), denying the plaintiff's application for approval to subdivide a lot in Milford into four separate building lots. The plaintiff is the prospective buyer of the lot at issue and a party to a contract to buy the property from the owner, Harriette Metzler. The contract to purchase the lot is contingent upon the plaintiff's successful appeal of the board's denial of permission to subdivide the lot. See Plaintiff's Exhibit No. 1, Real Estate Contract; Plaintiff's Exhibit No. 2, Amendment to Contract. The pertinent facts incident to this appeal are as follows:
On June 25, 1997, the plaintiff filed an application to re-subdivide Lot 2 of a 1979 subdivision located on West River Street, Milford, into four residential building lots. On July 10, 1997, the Milford Sewer Commission unanimously voted to approve the plaintiff's application for the connections of the proposed building lots to the Milford municipal sanitary sewer systems. (Return of Record for Appeal [ROR], Item f: Letter from Milford Sewer Commission to Plaintiff). On September 3, 1997, the Milford Inland Wetlands Agency voted to approve the plaintiff's application. (ROR, Item g: Letter from Milford Inland Wetlands Agency to Plaintiff). On July 14, 1997, the Milford Police Department, Traffic Division, approved the plaintiff's application. (ROR, Item b: Milford Police Department, Traffic Division, Planning Zoning Submission Review Form). On July 29, 1997, the Milford Director of Public Works approved the plaintiff's application. (ROR, Item e: Letter from Director of Public Works to City Planner). Finally, on October 7, 1997, the Milford Fire Department approved the application. (ROR, Item j: Letter from Fire Chief to Plaintiff).
A public hearing was held on the plaintiff's application for re-subdivision on October 21, 1997. (ROR, Item l: Notice of Public CT Page 11012 Hearing; ROR, Item n: Letter from City Planner to Plaintiff; ROR, Item o: Minutes of Public Hearings Held on October 21, 1997; ROR, Item p: Verbatim Minutes of Public Hearing Held on October 21, 1997). During the hearing, the plaintiff and Derrick Schull, a professional engineer and licensed land surveyor, appeared and gave testimony in favor of the application. (ROR, Item p, pp. 1-4, 14-24). Four individuals appeared in opposition to the plaintiff's application. (ROR, Item p, pp. 4-14, 24-27). The individuals opposing the application were neighbors who indicated that they were concerned with regular flooding of the lot the plaintiff sought to re-subdivide. (ROR, Item p, pp. 4-14). One of the neighbors presented photographs to the board regarding the extent of the flooding on the lot at issue. (ROR, Item p, p. 5; ROR, Item q: Photocopies of Photographs).
On October 28, 1997, the Subdivision and Special Permits Committee of the board (committee) held a meeting at which the committee discussed the plaintiff's application. (ROR, Item r: Minutes of Subdivision and Special Permits Meeting Held October 28, 1997). The minutes of the meeting indicated that the committee was concerned with the flooding on the lot and the adverse effect development would have on other properties in the area, and that it would recommend to the board to deny the application. (ROR, Item r, pp. 2-3).
On November 5, 1997, the board held a regular meeting at which it voted to deny the plaintiff's application. (ROR, Item t: Verbatim Minutes of Board Meeting Held November 5, 1997). The motion by members of the board to deny the application was based on the fact that "[t]he proposed subdivision has wetlands on the subject property and is subject to flooding." (ROR, Item t, p. 1).
By letter dated November 5, 1997, the board informed the plaintiff of its decision to deny the application, stating as the reason for its denial that "[t]he proposed subdivision has wetlands on the subject property and is subject to flooding." (ROR, Item v: Letter from Board to Plaintiff). On November 9, 1997, notice of the board's decision was published in The New Haven Register. See Plaintiff's Appeal, ¶ 9.
Thereafter, the plaintiff appealed the denial of the re-subdivision application to this court.
General Statutes § 8-8 governs appeals taken from the decisions of a planning and zoning board to the superior court. "A CT Page 11013 statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) Bridgeport Bowl-O-Rama, Inc. v.Zoning Board of Appeals, 195 Conn. 276, 283, 487 A.2d 559 (1985).
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal." Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184,192, 676 A.2d 831 (1996). Aggrievement was not contested at the time of the hearing and the facts to which the parties stipulated were sufficient for the court to conclude that the plaintiff is a person aggrieved. Accordingly, the court finds that the plaintiff is a "person aggrieved" under General Statutes § 8-8.
In addition, under General Statutes § 8-8(b), an "appeal shall be commenced by service of process . . . within fifteen days from the date that notice of the decision was published." The plaintiff alleges that the board heard and denied the application on November 5, 1997. See Plaintiff's Appeal, ¶ 8. Notice of the decision was sent to the plaintiff by certified mail on November 5, 1997, and the stamped certified mail receipt was dated November 7, 1997. In addition, the plaintiff alleges that notice of the board's decision was published in The New Haven Register on November 9, 1997. See Plaintiff's Appeal, ¶ 9. Pursuant to General Statutes § 8-8(e),[1] service was made on Alan H. Jepson, Milford City Clerk, and on Russell Mette, Chairman of the Milford Planning and Zoning Board, on November 21, 1997. The plaintiff's appeal of the denial of the subdivision application was therefore timely and served on the proper parties.
The limited scope of review in subdivision appeals is well established. "[A] municipal planning commission, in exercising its function of approving or disapproving any particular subdivision plan, is acting in an administrative capacity and does not function as a legislative, judicial or quasi-judicial agency, which would require it to observe the safeguards, ordinarily guaranteed to the applicants and the public, of a fair opportunity to cross-examine witnesses, to inspect documents presented, and to offer evidence in explanation or rebuttal and of the right to be fully apprised of the facts upon which action is to be taken. . . . The planning commission, acting in its administrative capacity . . . , has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance. . . . If it does not conform as required, the plan may be disapproved." (Citations omitted; internal quotation marks omitted.) Reed v. Planning CT Page 11014Zoning Commission, 208 Conn. 431, 433, 544 A.2d 1213 (1988).
In reviewing the commission's action, "[t]he trial court must determine whether the commission has correctly interpreted its regulations and applied them with reasonable discretion to the facts." (Internal quotation marks omitted.) Gorman ConstructionCo. v. Planning Zoning Commission, 35 Conn. App. 191, 195,644 A.2d 964 (1994), citing Pascale v. Board of Zoning Appeals,150 Conn. 113, 117, 186 A.2d 377 (1962). "Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons. . . . The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals,233 Conn. 198, 206, 658 A.2d 559 (1995). The trial court may sustain an appeal only upon a determination that the board's action was "arbitrary, illegal or an abuse of discretion." Id., 205-06.
"Where a zoning agency has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. . . . The [decision] must be sustained if even one of the stated reasons is sufficient to support it." (Internal quotation marks omitted.) Id., 208.
The plaintiff appeals the decision of the board to deny his subdivision application on the grounds that the board acted illegally, arbitrarily and in abuse of its discretion in that: (1) review of the application was a ministerial act, and the application complied with the subdivision regulations; (2) the application was denied by the board despite receiving all required approvals from city officials and agencies; (3) the application conformed to all applicable standards required for approval under the Milford subdivision regulations; (4) substantial and credible evidence presented to the board supported the approval of the application, and there existed no substantial and credible evidence which would support a denial of the application; (5) the board's reason for the denial of the application was not supported by substantial and credible evidence, and was invalid to deny the application; and (6) the board's denial of the application was the consequence of illegal action by its members outside the lawfully CT Page 11015 prescribed process, in discussion thereof or deliberation thereon, subsequent to the close of the public hearing on October 21, 1997 and prior to their November 5, 1997 regular meeting.[2]
Pursuant to Chapter 126 of the General Statutes, municipalities are permitted to create planning commissions with, inter alia, subdivision controls. "Unlike the zoning enabling statute, section 8-2, which has been broadly construed in court decisions, the subdivision statutes have received a narrow construction so that planning commissions do not have any powers other than those expressly granted to them in Chapter 126." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 10.1, p. 161. General Statutes § 8-25 provides most of the substantive requirements for subdivision regulations. Section8-25 states that "[b]efore exercising the powers granted in this section, the commission shall adopt regulations covering the subdivision of land." General Statutes § 8-25(a). Pursuant to §8-25, "[s]uch regulations shall provide that the land to be subdivided shall be of such character that it can be used for building purposes without danger to health or the public safety, that proper provision shall be made for water, drainage and sewerage, in areas contiguous to brooks, rivers or other bodies of water subject to flooding, including tidal flooding, that proper provision shall be made for protective flood control measures." General Statutes § 8-25(a).
The city of Milford adopted its subdivision regulations in 1973. In conformity with General Statutes § 8-25, the Milford subdivision regulations provide several references to flood control and other pertinent health or safety protection measures. For example, § 1.2 of the Milford subdivision regulations, providing a policy statement of the city, tracks the language of § 8-25(a): "[L]and to be subdivided shall be of such character that it can be used for building purposes without danger to health and safety; that proper provision shall be made for water supply, storm drainage and sanitary sewerage. . . ." Milford Subdivision Regs., § 1.2. Chapter 3 of the subdivision regulations provides for "Design Standards and Construction Specifications." Section 3.2 expressly states that "[l]and of such character in its natural state that is unsuitable for occupancy of building purposes because of danger to public health, safety and welfare by reason of . . . flooding conditions . . . shall not be subdivided for residential use nor for such other uses as may increase danger to health, life or property or otherwise aggravate the hazard; unless and until appropriate corrective measures have been taken by the subdivider CT Page 11016 to eliminate such hazards, subject to the approval by the Planning and Zoning Board, City Engineer and Health Administrator." Milford Subdivision Regs., § 3.2. Moreover, chapter 4, providing requirements for "Specifications for Final Subdivision Plans and As-Built Plans," states in pertinent part that "[t]he Final Subdivision Plan shall include a Construction Plan showing the following information:
 * * *
"(2) The accurate location of the regulatory flood protection elevation, established wetland boundaries and boundaries of other flood-prone areas including the seasonal high water mark, where applicable.
"(a) All subdivision proposals shall be consistent with the need to minimize flood damage.
"(b) All subdivision proposals shall have public utilities and facilities such as sewer, gas, electrical and water systems located and constructed to minimize flood damage.
"(c) All subdivision proposals shall have adequate drainage provided to reduce exposure to flood damage.
"(d) Base flood elevation data shall be provided for subdivision proposals." Milford Subdivision Regs., § 4.1.2(2) (a)-(d).
In addition, § 3.1 of the subdivision regulations provides that "[p]roposed subdivisions and all street, drainage and other improvements shall be designed and constructed in accordance with the Plan of Development, Plan of Sewerage System, and the Zoning Regulations." Milford Subdivision Regs., § 3.1. The Milford zoning regulations devote an entire section under article V to "Flood Hazard and Flood Damage Prevention Regulations." Milford Zoning Regs., § 5.6. The purpose of § 5.6 is "to promote the public health, safety and general welfare and to minimize public and private losses due to flood conditions in specific areas by provisions designed to [inter alia]:
"(1) Require that land, buildings, structures and uses thereof which are vulnerable to floods . . . be provided with a safe building site and access and be adequately protected against flood and erosion damage at the time of initial construction. CT Page 11017
"(2) Require that land areas which are unsuited for intended purposes because of flood or erosion hazard be delineated on any site or subdivision plan and that such areas which are not suitable for development be subject to easements or other legal restrictions necessary for the protection thereof. . . ." Milford Zoning Regs., § 5.6.1(1)-(2).
The board stated as its reason for denial of the plaintiff's application that "[t]he proposed subdivision has wetlands on the subject property and is subject to flooding." Since the board stated the reason for its action, the court should inquire only as to whether the assigned ground is reasonably supported by the record and pertinent to the considerations which the board was required to apply under the regulations.
In his brief, the plaintiff makes a number of arguments in support of his appeal of the board's denial of his subdivision application. First, the plaintiff asserts that the board was required to approve the application because it complied with all of the subdivision regulations. According to the plaintiff, since the application received all pertinent approvals and since the board did not cite to any particular subdivision regulation in its official action of denial other than "a general policy statement within the subdivision regulations," the denial of the application was improper and the reason given by the board was invalid.
The board's task in considering a subdivision application is not merely to determine whether the application has received agency approvals and, if so, simply to provide its own "rubber-stamp" approval. Rather, the board's task is to determine whether the application conforms to the subdivision regulations and, if applicable, zoning regulations adopted for its guidance. Reed v.Planning Zoning Commission, supra, 208 Conn. 433. If the application does not so conform, the board should disapprove it. Id.; R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 33.8, p. 578.
Although § 1.2 of the subdivision regulations is a policy statement which, standing alone, would "not provide a sufficient basis for rejection of a subdivision permit"; Sowin Associates v.Planning Zoning Commission, 23 Conn. App. 370, 376, 580 A.2d 91, cert. denied, 216 Conn. 832, 583 A.2d 131 (1990); there exist other provisions in the subdivision regulations, authorized under General Statutes § 8-25, which expressly require the board to consider the CT Page 11018 danger of flooding in determining whether to grant a subdivision application. See Milford Subdivision Regs., §§ 3.2, 4.1.2. Moreover, § 3.1 of the subdivision regulations provides that subdivisions shall be designed in accordance with the zoning regulations, and the zoning regulations in turn include "Flood Hazard and Flood Damage Prevention Regulations." See Milford Zoning Regs., § 5.6.
In R. B. Kent Sons, Inc. v. Planning Commission,21 Conn. App. 370, 573 A.2d 760 (1990), the Appellate Court considered the effect of certain Ledyard subdivision regulations regarding flood control measures, which are almost identical to the pertinent Milford subdivision regulations.[3] The court held that "[t]hese regulations, read together, implicitly recognize that a proposed development may create some additional water runoff, and that a balance must be struck between development and the need to maintain flood control. Under these regulations, the commission is required to evaluate the likely flood effects, if any, of a proposed subdivision by reaching factual conclusions concerning whether appropriate measures for protective flood control have been taken, whether the subdivision design is consistent with the need to minimize flood damage, whether any safety risk due to aggravation of flood hazard has been eliminated, and whether the subdivision plan has minimized the risk of flood damage or infiltration." Id., 376. Accordingly, the Appellate Court determined that the trial court erred in sustaining an appeal of the approval of the subdivision application since evidence in the record supported the commission's decision, which was based on the proper regulatory considerations. Id., 376-77. The Appellate Court appropriately recognized that it was unable to substitute its judgment for that of the commission. Id., 377.
Thus, in the present case, the board's stated reason for denying the plaintiff's application was pertinent to the considerations which it was required to apply under the subdivision and zoning regulations. Having determined that the regulations authorize the board to consider flooding conditions, the next question is whether the board could reasonably have concluded that the plaintiff's application did not conform to the regulations on that basis.
The plaintiff argues that substantial and credible evidence for approval was presented, and no substantial or credible evidence for denial was submitted. Therefore, according to the plaintiff, the board should have approved the subdivision application. In CT Page 11019 support of his position, the plaintiff merely cites to pages of the verbatim minutes of the October 21, 1997 board meeting. A review of the verbatim minutes reveals that the board was alerted to flooding problems on the subject lot by neighbors who opposed the subdivision. The plaintiff's engineer indicated that the proposed subdivision addresses the flooding concerns in two ways. First, the engineer indicated to the board that the "flood zone base elevation at this area is elevation 53, according to the flood mapping, and what we have proposed in this site area if you will note on the site grading plan, that these garage floor elevations are proposed to be at elevations 57 and 58, which is above the 100 year flood elevation 53. The access driveways grading is at elevation 56 through the elevation 57 and this also is above the elevation for the flood area elevation zone of 53." (ROR, Item p, pp. 14-15).
Second, the engineer indicated that since the plans include "overhead [electrical] utilities . . . there shouldn't be any concern for loss of power with underground utilities." (ROR, Item p, p. 15). A board member voiced his concern that "[o]ur regulations stipulate that subdivisions will have underground utilities and we haven't heard anything in this petition that you want to change those." (ROR, Item p, p. 15). In response, the plaintiff seemed to indicate that the utilities would in fact be placed underground, but would be above the flood elevation level. (ROR, Item p, p. 16). In any event, the plaintiff indicated that the exterior utilities, running from the providers to the subdivided lots, would certainly be located underground. (ROR, Item p, p. 16).
Contrary to the plaintiff's assertion that there was no substantial or credible evidence in the record to support denial of the application, a review of the record reveals that the denial is reasonably supported. For example, in his testimony before the board, the plaintiff's engineer conceded that the subject lot would flood even with the proposed elevations since the street floods at an elevation of 58 feet, and the application contains 57 foot elevations. (ROR, Item p, p. 20). The engineer testified that the water would "be directed in through the wetlands . . . through the natural contours." (ROR, Item p, p. 20).
The board indicated that it was concerned about the run-off from the subject lot onto the neighbors' lots. (ROR, Item p, p. 19-21). The neighbors themselves also testified before the board and voiced their concerns regarding the increase in the grade of CT Page 11020 the proposed plan and water run-off resulting therefrom. (ROR, Item p, passim). The neighbors submitted photographs demonstrating the extent of the flooding, and testified as to the extent and frequency of the flooding. (ROR, Item p, pp. 4-5, 8-13). One neighbor testified that "this property floods on a regular basis. This is not the hundred year storm I'm talking about. This is regularly 3, 4, 5 times a year." (ROR, Item p, p. 4). Another neighbor indicated that "at least four times a year, the water is high enough that it covers his driveway and it's impassible. . . . [T]his is an area that inherently collects a lot of water. It comes across the street." (ROR, Item p, pp. 8-9). Yet another neighbor testified that flooding "goes on most of the winter, from January to May, on a routine basis. We ice skate on it." (ROR, Item p, p. 9). A fourth neighbor testified that "this area floods and it doesn't flood once a year. It floods many, many times a year; five and six." (ROR, Item p, p. 13). Some of the neighbors indicated that they were concerned with the water run-off into their properties, particularly with regard to the effect on their septic systems and damage to their foundations. (ROR, Item p, pp. 10-11, 12-14).
Courts may not substitute their judgment for that of the board, and the decisions of the board may not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. Bloom v. Zoning Board of Appeals, supra,233 Conn. 206; R. B. Kent Sons, Inc. v. Planning Commission, supra,21 Conn. App. 377. Moreover, "debatable questions of fact . . . [are] within the commission's province to resolve." Westport v. Norwalk,167 Conn. 151, 161, 355 A.2d 25 (1974) (considering conflicting evidence regarding proposed subdivision of increase in water runoff which "would aggravate the flood hazard"). "[T]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency." Newtown v.Keeney, 234 Conn. 312, 319, 661 A.2d 589 (1995).
The assigned ground for the board's denial is reasonably supported by the record, and it was within the board's province to determine the factual issues. In addition, the denial of a subdivision application based on concerns for flooding is pertinent to the considerations which the board was required to apply under the subdivision and zoning regulations. See R. B. Kent Sons,Inc. v. Planning Commission, supra, 21 Conn. App. 375-77. Therefore, the plaintiff's challenge to the board's action on this basis is unavailing. CT Page 11021
As a third basis for his appeal, the plaintiff asserts that the board illegally received evidence after the public hearing through the chairman who visited the subject lot after the hearing. In support of this argument, the plaintiff cites to Running BrookProperties v. Planning Zoning Board of the City of Milford, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 034313 (May 8, 1991, Fuller, J.), and argues that the chairman's visit to the property likely affected the board's decision to deny the application and likely swayed the opinions of the other members of the board. Since the plaintiff had no opportunity to rebut the evidence collected by the chairman, the plaintiff argues that the receipt of such evidence was illegal.
In Running Brook Properties, supra, a Planning and Zoning Board member was contacted by an opponent of the subdivision application after the public hearing, and was taken to the property to view it in an attempt by the opponent to influence the board member to vote against the application. See id. The court noted that, although it was not raised by the plaintiff, this "conduct was clearly improper and amounted to illegal receipt of evidence after the public hearing." Id.
Indeed, "[a]n administrative agency should not consider evidence submitted after the public hearing is closed without giving opponents an opportunity to inspect and question it and offer evidence in rebuttal. . . . Illegal receipt and consideration of evidence submitted after the public hearing by the agency can invalidate its action." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 47.4, p. 764; see Pizzola v. Planning Zoning Commission, 167 Conn. 202, 207,355 A.2d 21 (1974). The present case, however, is distinguishable from Running Brook Properties and those cases which have addressed the propriety of the actions of an agency in receiving evidence after the public hearing.
At the outset, it should be noted that "a municipal planning commission, in exercising its function of approving or disapproving any particular subdivision plan, is acting in an administrative capacity and does not function as a legislative, judicial or quasi-judicial agency, which would require it to observe the safeguards, ordinarily guaranteed to the applicants and the public, of a fair opportunity to cross-examine witnesses, to inspect documents presented, and to offer evidence in explanation or rebuttal and of the right to be fully apprised of the facts upon which action is to be taken." Reed v. Planning ZoningCT Page 11022Commission, supra, 208 Conn. 433.
Even if the plaintiff was entitled to the full safeguards accorded in judicial or quasi-judicial proceedings, the plaintiff's argument that the board received illegal post-hearing evidence is nevertheless unavailing for several reasons. First, the board member in the present case visited the property after the public hearing on his own initiative, not upon the request of some adversary to the plaintiff's application. Therefore, no evidence was submitted by any party to the board in an ex parte fashion warranting rebuttal. A "commission is not required to provide an opportunity for rebuttal when it relies on the knowledge and experience of one of its members on nontechnical issues."Brookfield Plaza Limited Partnership v. Zoning Commission,21 Conn. App. 489, 494, 574 A.2d 825 (1990).
Second, "[i]n determining whether or not the application complies with the regulations, the commission members can consider facts which they learn by personal observation of the property and its surrounding area." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 33.8, p. 580, citing ForestConstruction Co. v. Planning Zoning Commission, 155 Conn. 669,675, 236 A.2d 917 (1967); see also Brookfield Plaza LimitedPartnership v. Zoning Commission, supra, 21 Conn. App. 489
(reversing trial court's determination that report prepared by commission member and submitted to commission subsequent to public hearing, which included the member's personal observations regarding the property, was illegal receipt of post-hearing evidence).
Finally, the "evidence" obtained by the board member after the public hearing was merely cumulative in nature since there already existed substantial evidence in the record that the lot at issue tended to flood. See First Hartford Realty Corp v. Plan ZoningCommission, 165 Conn. 533, 545, 338 A.2d 490 (1973). Thus, even if the observation of the property by the chairman constituted "illegal receipt of evidence," there is no indication that this additional evidence prejudiced the plaintiff's cause in any way. See Connecticut Natural Gas Corp. v. Public Utilities ControlAuthority, 183 Conn. 128, 139, 439 A.2d 282 (1981) ("use of improper evidence requires remand only if a party has affirmatively shown substantial prejudice").
As a final argument, the plaintiff contends that this court should follow the decision of Running Brook Properties v. PlanningCT Page 11023 Zoning Board of the City of Milford, supra, Superior Court, Docket No. 034313, which sustained a subdivision applicant's appeal on grounds similar to those claimed to exist by the plaintiff in the present case. Running Brook Properties, however, is sufficiently distinguishable from, and therefore inapplicable to, the present case.
In Running Brook Properties, the board denied the plaintiff's subdivision application after a public hearing and vote. The board failed to provide a reason for its denial of the application. On appeal, the plaintiff argued, inter alia, that the board was required to approve the application because it complied with the subdivision regulations. The court, Fuller, J., noted that since no reason was given by the board for its denial of the plaintiff's application, it was required to search the record to determine if the application was properly denied for failure to comply with the subdivision regulations. The court further noted that since no reason had been assigned, the court could look to individual statements of the commission members for guidance as to their reasons.
According to the court, one concern of the board members was that some of the houses would be within 25 feet of wetlands. The court commented that this concern "ignored the fact that the inland wetlands agency had no objection to the proposal and had approved a regulated activities permit with conditions." Running BrookProperties v. Planning Zoning Board of the City of Milford, supra, Superior Court, Docket No. 034313. The town argued, inter alia, that the board may have denied the application because some of the building lots might cause flooding, citing General Statutes § 8-25(a) and § 3.2 of the subdivision regulations. The court noted that the board did not discuss flooding as grounds for its denial of the application, and that a review of the subdivision regulations did not disclose any specific provisions on flooding and none were identified by the board. The court found that § 3.2 of the subdivision regulations contains "a laundry list of factors for proposed building lots, and buried in it is a reference to `flooding conditions' and the customary bromide that lots must be able to be used for building purposes without danger to public health and safety," but that "general policy statements in the subdivision regulations are not a valid reason for rejecting a subdivision application." Running Brook Properties v. Planning Zoning Board of the City of Milford, supra, Superior Court, Docket No. 034313. The court noted that none of the board members referred to flooding problems during their deliberations. CT Page 11024
Finally, the court noted that the plaintiff received all necessary approvals for the subdivision, as required by § 2.2.4 of the regulations, including the Wetlands Agency, and that there was no evidence in the record indicating that the subdivision proposal would aggravate any flooding problems.
In contrast to Running Brook Properties, the board in the present case specifically identified flooding as the reason for its denial of the plaintiff's subdivision application. The court in the present case is not presented with a circumstance like that inRunning Brook Properties where the town attempted to cleanse the board's decision by citing a reason not even contemplated by the board and not supported by substantial evidence. The board inRunning Brook Properties was concerned with the subdivision's encroachment on wetlands, not flooding. Here, there exists ample evidence in the record to support a denial by the board based on the aggravation of flooding conditions as a result of the proposed re-subdivision.
Moreover, as indicated supra, the court finds that the subdivision regulations, as well as the zoning regulations, require the board to consider flooding in determining whether to grant or deny a subdivision application. See R. B. Kent Sons, Inc. v.Planning Commission, supra, 21 Conn. App. 375-77. Indeed, § 3.2 of the subdivision regulations expressly states that land which is unsuitable for occupancy of building purposes because of danger to public health, safety and welfare by reason of flooding shall not be subdivided for residential use unless appropriate corrective measures are taken. See Milford Subdivision Regs., § 3.2. Moreover, § 4.1.2 of the subdivision regulations requires the final subdivision plan to include a construction plan showing the accurate location of the regulatory flood protection elevation. See Milford Subdivision Regs., § 4.1.2. Under § 4.1.2, "[a]ll subdivision proposals shall be consistent with the need to minimize flood damage"; "[a]ll subdivision proposals shall have public utilities and facilities such as sewer, gas, electrical and water systems located and constructed to minimize flood damage"; and "[a]ll subdivision proposals shall have adequate drainage provided to reduce exposure to flood damage." (Emphasis added.) Milford Subdivision Regs., § 4.1.2(2)(a)-(c).
Section 3.1 of the subdivision regulations, referring to conformity with the zoning regulations, further clothes the board with the authority to consider flooding in determining whether to CT Page 11025 approve a subdivision application pursuant to the "Flood Hazard and Flood Damage Prevention Regulations" of the zoning regulations. See Milford Zoning Regs., § 5.6.
Since the circumstances of the present case are distinguishable from those in Running Brook Properties, the court declines the plaintiff's invitation to "[f]ollow the decision ofRunning Brook Properties under the doctrine of stare decisis."[4]
For the foregoing reasons, the plaintiff's appeal of the board's denial of his application for re-subdivision is dismissed.
SO ORDERED:
Joseph H. Sylvester JUDGE OF THE SUPERIOR COURT