[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Maureen DeRosa and Sandra Brunoli, filed this appeal of the defendant Southington Planning and Zoning Commission's decision denying their resubdivision application for property at 300 Berlin Street, Southington. The plaintiffs appeal pursuant to General Statutes § 8-8. For the reasons set forth below, the court sustains the plaintiffs' appeal.
General Statutes § 8-8(b) provides that any person aggrieved by a decision of a local zoning authority may appeal. At the hearing before this court, the plaintiffs submitted deeds showing their ownership of the subject property. Accordingly, this court finds that the plaintiffs are aggrieved.
The record reflects the following facts. The plaintiffs submitted an application dated December 5, 1998 to the Southington Planning and Zoning Commission ("commission") for a resubdivision of their property to create a rear lot. (Return of Record (ROR), Exhibit A.) The plaintiffs's property consisted of two lots, one of which was developed. (ROR, Exhibit D.) The plaintiffs proposed to resubdivide the approved vacant parcel into two lots, serviced by town water and private septic systems. CT Page 2214 (ROR, Exhibit D.) A similar application by the plaintiffs was previously denied by the commission due to insufficient lot area, in that the plaintiffs had proposed onsite private water and septic systems, which required one full acre. (ROR, Exhibit D; Exhibit O, p. 2.) On March 2, 1999, the commission held a public hearing on the plaintiffs' application. (ROR, Exhibits N, O.) At the hearing, Sandra Brunoli testified in favor of the plaintiffs' application, and an abutting property owner, Francis Verderame, testified in opposition to the application. (ROR, Exhibit O.)
At its regular meeting on March 2, 1999, the commission discussed the plaintiffs' application and voted to deny it. (ROR, Exhibit P.) The town planner sent the plaintiffs a letter dated March 8, 1999, notifying them of the denial. In the letter, the town planner gave the following reasons for the denial: (a) the proposed rear lot fails to represent the highest and best use of the property; (b) testimony was provided concerning water problems (drainage); (c) the proposal fails to represent the highest and best use of the land due to conditions of temporary flooding; and (d) the commission finds that the property is better suited for one rear lot due to the use of private septic systems and access drive. (ROR, Exhibit S.) Legal notice of the denial was published in the Southington Record-Journal on March 8, 1999. (ROR, Exhibit R.) This appeal was timely served upon the town clerk and chairman of the commission on March 15, 1999. See General Statutes § 8-8(b).
"It is axiomatic that a planning commission, in passing on a resubdivision application, acts in an administrative capacity and is limited to determining whether the plan complies with the applicable regulations." R.B. Kent Sons v. Planning Commission,21 Conn. App. 370, 373 (1990); see Reed v. Planning ZoningCommission, 208 Conn. 431, 433 (1988). Conclusions reached by the commission must be upheld "if they are reasonably supported by the record. . . . The question is not whether the... court would have reached the same conclusion, but whether the record before the agency supports the decision reached." Property Group, Inc.v. Planning Zoning Commission, 226 Conn. 684, 697 (1993). "The conclusions of the commission must stand if even one of the stated reasons is reasonably supported by the record." R.B. Kent Sons v. Planning Commission, supra, 21 Conn. App. 373. The evidence to support any such reason must be substantial. PropertyGroup, Inc. v. Planning Zoning Commission, supra,226 Conn. 697; see Huck v. Inland Wetlands Watercourses Agency,203 Conn. 525, 540 (1987). "[E]vidence is sufficient to sustain an agency CT Page 2215 finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [a commission's] finding from being supported by substantial evidence." Property Group, Inc. v. Planning ZoningCommission, supra, 226 Conn. 697-98. The plaintiff has the burden of showing that the commission acted improperly. GormanConstruction Co. v. Planning Zoning Commission,35 Conn. App. 191 (1994).
In addition to the applicable zoning and subdivision regulations, the commission's decision on the plaintiffs' application was also governed by regulations pertaining specifically to rear lots. Section 11-14.1 of the Southington Zoning Regulations provides: "The provisions of this section are intended to permit the use of land for residential purposes, which land has been unintentionally landlocked or deprived of minimum lot frontage on a street, or in case of a subdivision, where topography or unusual shape of the property lends itself to the use of a rear lot to accomplish the best use of the land." Section 11-14.5 provides that the commission "shall not approve rear lots unless it finds that such lots provide the best use of the land, taking into consideration difficult drainage, difficult configuration, inaccessibility, temporary flooding, steep topography, utility lines and rights-of-way."
The plaintiffs argue that their application for resubdivision satisfied all the requirements of the zoning regulations and the commission's denial, therefore, was not supported by the record. The commission claims that it was within its discretion to find that further subdivision of the property was not the best use of the land, particularly in light of the temporary flooding, and/or its possible negative impact upon the proposed septic system.
The record shows that the plaintiffs' application conformed to the zoning regulations. The issue in this appeal is whether the record contains substantial evidence supporting the commission's decision that the resubdivision of the property into two rear lots was not the best use of the land under section 11-14.5 of the Southington Zoning Regulations.
The town planner, town engineer and health department all approved the application. The town planner provided his checklist, and noted that the commission had a letter from the CT Page 2216 health department giving preliminary approval. (ROR, Exhibit O, p. 2; Exhibit D; Exhibit J; Exhibit K.) At the public hearing, the town planner noted that the septic system would be outside any flooded area, however, there was a reserve system that looked like it came somewhat close. (ROR, Exhibit O, p. 2.) He further indicated that drainage improvements were proposed as part of the application, and that the town engineer had required fill material to be removed to increase the drainage capacity and had asked the applicant to install a drywell to minimize ponding in winter. (ROR, Exhibit O p. 2.) He also referred to the plaintiffs' grading plan, which included a berm along the eastern boundary "intended to try to direct water into the drywell and keep it from impacting adjoining properties." (ROR, Exhibit O, p. 3.) With respect to the reserve system, the plaintiffs engineer, Russell Andres, stated that there were different sewage disposal systems that could be used to allow the reserve area to be pushed further away from the low area. (ROR, Exhibit O, p. 6.)
When questioned about ponding on the property, the minutes reflect that the town engineer indicated that "[t]here will always be some ponding there, but in my opinion, with these improvements, it won't be any worse than it is now." (ROR, Exhibit O, p. 5.) A member of the commission asked the town engineer "if he had a problem with this at all and he said he did not." (ROR, Exhibit O, p. 6.)
Sandra Brunoli testified at the public hearing that resubdividing would be the best use of the property, in keeping with the character of the neighborhood of smaller ranch and cape style homes. (ROR, Exhibit O, p. 4.) She further testified that the lot sizes would be sufficient to sustain two separate septic systems, especially with an engineered design. (ROR, Exhibit O, p. 4.)
The only testimony opposing the plaintiffs' application was from Francis Verderame, an abutting property owner. He testified that the applicants purchased the property knowing that there was only one rear lot remaining on which to build. (ROR, Exhibit O, pp. 4-5.) He expressed concerns regarding flooding, ponding, and freezing of ponded water that had occurred on the property. (ROR, Exhibit O, p. 4.) He further indicated that if the site was built up, water runoff will collect in the area. (ROR, Exhibit O, p. 4.) He also expressed concerns regarding the use of private septic systems on the property, rather than public sewers, stating: "Reduction of the lot size to permit another lot would CT Page 2217 have an adverse effect on the property abutting the location." (ROR, Exhibit O, pp. 4-5.)
At the commission meeting, only Chairman Michael Riccio and one other member of the commission, Mary Baker, commented on the application prior to the commission's vote. Chairman Riccio stated: "We, about six months ago, had a lot of talk here about rear lots and what's going on with them and should they be increased or decreased, how many should be in a subdivision, and that sort of thing. . . . The lot was bought knowing what the requirements were at that time and I think that it's not in the highest and best use of the property at this time to create another rear lot back there." Chairman Riccio further stated: "We had someone here that spoke about that it's going to appear like a mini-road, and that's exactly what it is going to look like. And the ZBA can go and give variances until the end of time, but it doesn't mean we have to grant rear lots in all instances. . . . The fact is that a lot of big land is gone now and we're going into the smaller land that's left in Town and just because that's coming in for subdivision doesn't mean it's appropriate. And, in this instance I don't think it is. There was testimony as to water problems back there. . . . So, I would be voting against the . . . two rear lots." (ROR, Exhibit P, pp. 13-14.) Mary Baker stated: "In keeping with my past vote on rear lots, I don't find that this is . . . the best use of the land because of the temporary flooding. I'd rather see it go as the one lot that it is now and not increase the density twofold having the two lots, and especially, if the use of the private septic systems and counting the access drive (inaudible) from the lot. I won't be voting for this." (ROR, Exhibit P, p. 14.)
While the zoning regulations give the commission the discretion to determine if a rear lot subdivision is the best use of the land, that determination must be supported by substantial evidence in the record. The commission's first stated "reason" for its denial of the application is simply its conclusion that the proposed rear lot fails to represent the highest and best use of the property. The other reasons stated in the commission's decision are based solely on the statements made by Mr. Verderame at the public hearing. However, those statements were expressions of Mr. Verderame's concerns regarding flooding and drainage problems that already existed on the property, his opinion that the site should be served by public sewers rather than the proposed private septic systems, and his conclusion that abutting property owners would be adversely affected by the creation of a CT Page 2218 second lot. These concerns and opinions were not supported by any underlying factual evidence showing that the creation of a second lot would result in an increase in flooding or drainage problems on the property, or that the use of a private septic system or the proposed access drive would adversely affect either the site or abutting properties. The only testimony and evidence in the record regarding the actual impact of the creation of the second lot came from the town planner, the town engineer, the health department, and the plaintiffs' engineer. The testimony of the plaintiffs' engineer and town officials showed that the creation of the second lot, with the improvements proposed in the application and conditions imposed by the town officials, would not exacerbate any conditions currently existing on the site or adversely impact the abutting properties.
The record does not contain substantial evidence supporting the commission's finding that the creation of a second rear lot on the property would not be the best use of the land. Accordingly, the plaintiffs' appeal is sustained.
Michael Hartmere