[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Landmark Development Group, LLC (Landmark), Bayberry Associates (Bayberry) and TMK Associates (TMK),[1] appeal from the decision of the defendant, the East Lyme Zoning Commission, approving a change in the zoning regulations which restricts the use and development of land the plaintiffs' claim they have an interest in. For reasons hereinafter stated, the decision of the defendant Zoning Commission is affirmed.
 BACKGROUND
On July 29, 1999, the defendant approved four amendments to the East Lyme Zoning regulations. The first amendment adds a minimum building area requirement to section 1.38 of the zoning regulations (lot size amendment). The second amendment, the open space-cluster amendment, (cluster amendment) revises section 23 of the East Lyme zoning regulations. The third amendment creates a Greenway Conservation District (Greenway amendment). In the Greenway Conservation District the regulations impose minimum lot size requirements and restrictions on the type, number, height and size of buildings that may be constructed The CT Page 6513 last amendment (rezoning amendment) renames the former RU-120[2] Rural District as the Greenway District and rezones all of the property within the district so that a minimum parcel size of five acres is required for construction. All of the amendments principally affect the area known as Oswegatchie Hills.
The defendant conducted a public hearing on the cluster and lot size amendments on June 17, 1999. The hearing on the lot size amendment was opened and closed on June 17, 1999. A hearing was opened on the cluster amendment and continued to July 8, 1999. On July 8, 1999, the defendant conducted public hearings on the Greenway and rezoning amendments and closed the hearing on the cluster amendment. The defendant deferred its deliberations on all four proposed amendments until its next meeting on July 29, 1999. On July 29, 1999, the defendant deliberated on all of the proposed amendments and voted unanimously for their approval. On August 11, 1999, notice of the defendant's decision was published in The NewLondon Day.
On August 25, 1999, the plaintiffs filed an administrative appeal challenging the validity of the amendments. The plaintiffs allege they sought to build a golf course on property affected by the amendments. The plaintiffs filed an application to amend the language of the zoning regulations to enable them to build the golf course; and the plaintiffs also filed a proposal to create a residential subdivision on the property, which were precluded by the passage of the amendments. The plaintiffs allege that the defendant knew of its plans and amended the zoning regulations to control the development of the property.
 JURISDICTION
General Statutes § 8-8 governs an appeal from the decision of a planning and zoning commission to the superior court. "There is no absolute right of appeal to the courts from a decision of an administrative agency. . . . Appeals to the courts from . . . [administrative agencies] exist only under statutory authority. . . . Appellate jurisdiction is derived from the . . . statutory provisions by which it is created, and can be acquired and exercised only in the manner prescribed." (Citations omitted; internal quotation marks omitted.)Ensign-Bickford Realty v. Zoning Commission, 245 Conn. 257, 262-63,715 A.2d 701 (1998).
Aggrievement
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiffs appeal."Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192-93, 676 A.2d 831
CT Page 6514 (1996). "Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.)Hall v. Planning Commission, 181 Conn. 442, 445,435 A.2d 973 (1980). The burden of demonstrating aggrievement rest with the plaintiff. Hickey v. New London,153 Conn. 35, 37, 213 A.2d 308 (1965). "The question of aggrievement is one of fact to be determined by the trial court."Primerica v. Planning Zoning Commission, 211 Conn. 85, 93, 558 A.2d 646
(1989).
To be statutorily aggrieved a party must meet the requirements of General Statutes § 8-8. General Statutes § 8-8 (a)(1) provides: "`Aggrieved person' means a person aggrieved by a decision of a . . . zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals. . . ."
The plaintiffs allege that they either own property or have a legal interest in properties which are directly affected by the amended zoning regulations. During the hearing, the plaintiffs called witness who testified that each of the plaintiffs, in their individual capacities, owned property or interest in property which is affected by the amended zoning regulations. As such, this court finds that the plaintiffs are aggrieved.
Timeliness and Service of Process
General Statutes § 8-8 (b) provides in part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Subsection (e) provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality." General Statutes § 8-8 (b).
The record contains an affidavit of publication attesting that notice of the defendant's decision was published on August 11, 1999 in the NewLondon Day. On August 26, 1999, the appeal was served on the town of East Lyme's town clerk and Paul Formica, the chairman of the zoning commission. Accordingly, the court finds that this appeal was commenced in a timely manner by service of process upon the parties.
 DISCUSSION
The plaintiffs appeal the amendments to the zoning regulations on the CT Page 6515 following grounds: The defendant lacked subject matter jurisdiction to approve the rezoning amendment because the defendant failed to adequately notify the public of the location of the parcels of land that would be affected by the amendment. The defendant lacked subject matter jurisdiction to approve the amendments because the published prehearing notices were insufficient to notify the public of the nature and character of the amendments. The decisions of the defendant to amend the regulations were arbitrary, capricious and in an abuse of its discretion because the decisions were made without a full public hearing. The defendants lacked subject matter jurisdiction to approve the Greenway and rezoning amendments because it published a notice of a hearing on the amendments and did not hold a hearing. The defendant's denial of the plaintiffs' motion for a continuance violated the plaintiffs' due process rights to a full and fair hearing. The decision to approve the four amendments was arbitrary, capricious, and in abuse of discretion because the defendants failed to consider the factors provided in General Statutes § 8-2 and the town's comprehensive plan when making its decision. Lastly, the defendant's jointly stated reasons for adopting the amendments were legally insufficient to justify the approval of the amendments.
1. WHETHER THE PUBLISHED NOTICE FOR THE REZONING AMENDMENT ADEQUATELY IDENTIFIED THE AFFECTED PROPERTIES.
The plaintiffs argue that the prehearing notice[3] for the rezoning amendment was inadequate to confer the defendant with subject matter jurisdiction because it does not adequately describe the affected properties. Specifically, the plaintiffs argue that the published notice, which provided a listing of the properties by property map and parcel number and a metes and bounds description, was inadequate to describe the location of the affected properties. Additionally, the plaintiffs argue that the inclusion of the map and parcel numbers, in the notice, without indicating which maps were referred to, served to confuse the public and invalidate the notice.
The defendant argues that the description it published was more than adequate to describe the affected property because the properties were identified by both a metes and bounds description and by map and lot number. The defendant further argues that, even if the public would not have been able to determine the properties affected solely by the use of the map and lot numbers, the description of the property by its metes and bounds was sufficient to apprise the public of the area affected.
"Compliance with prescribed notice requirements is a prerequisite to a valid action by a [z]oning [commission] and failure to give proper notice constitutes a jurisdictional defect." Wright v. Zoning Board of Appeals, CT Page 6516174 Conn. 488, 491, 391 A.2d 146 (1978). Our Supreme Court "has held that the purpose behind the notice requirement of § 8-3 is fairly and sufficiently to apprise those who may be affected by the proposed action of the nature and character of the proposed action so as to enable them to prepare intelligently for the hearing." (Internal quotation marks omitted.) Jarvis v. Acres, Inc. v. Zoning Commission, 163 Conn. 41, 47,301 A.2d 244 (1972) "Whether the content of the published notice is adequate represents a question of fact to be resolved by the court.Fuller, Land Use Law and Procedure (1993)." Tilcon Minerals, Inc. v.Planning Zoning Commission, Superior Court, judicial district of New London, Docket No. 530666 (May 25, 1995, Purtill, J.) (14 Conn.L.Rptr. 361). "[T]he burden of proving that the notice was defective rests on the persons asserting its insufficiency." Peters v. Environmental ProtectionBoard, 25 Conn. App. 164, 170, 593 A.2d 975 (1991).
"There is no requirement that the published notice describe the proposed action in detail or with exactitude." Welles v. East Winsor,185 Conn. 556, 559, 441 A.2d 174 (1981). While any notice of a proposed zoning amendment or application "may not be misleading, it need not be exact." R.B. Kent Son, Inc. v. Planning Commission, 21 Conn. App. 370,378, 573 A.2d 760 (1990). Where notice is challenged, the court must determine whether the notice given provided constructive notice that "enable[d] parties who have an interest in the subject property to know what is projected and to have an opportunity to protest." Peters v.Environmental Protection Board of Stamford, supra, 25 Conn. App. 168. "The act of giving statutory notice is much too important to be done by way of informal, unofficial or chancy cross-referencing." Id., 169.
Members of the general public, upon reading the notice for the rezoning amendment, would have been reasonably aware that the notice referred to a large area, the then existing RU-120 zone, described as Oswegatchie Hills. The description, in itself, might not be sufficient if it could not be assumed that all members of the general public were aware of the location of the RU-120 zone or if they had an interest in properties within the zone. The record indicates, however, that the area described as Oswagatchie Hills was well known in the community and it must be assumed that members of the general public would have recognized it and have been aware of its general location.
The notice sets forth two lists described as "property maps." Although this notice does not say it, testimony was introduced that the reference in the notice is to maps maintained by the tax assessor and the parcels are numbered parcels of real estate shown on these maps. Presumably, the list provided in the notice contains all of the parcels which would be affected by the change. CT Page 6517
With some justification, the plaintiffs criticize this method of describing the area to be rezoned. The notice does not indicate that the maps and parcels are maintained by the tax assessor or where a member of the general public could find them. Also, due to the scale and size of the maps, it would be almost impossible to put them together so as to create a single layout of the area to be rezoned. At trial, it was also pointed out that the maps are working documents with the assessor's office making frequent changes. There was testimony which suggested there were no active changes which affected the maps used to create the parcel listing. It must, however, be concluded that although some members of the public would, with a little effort, be able to determine what properties were affected by the proposal, the reference to the "property maps and parcels" was, itself, inadequate to warn the general public of the area to be rezoned.
What follows next in the notice is a long detailed metes and bounds description of the area involved. The defendant's metes and bounds description relies on two elements, the number of the lots and parcels, found on the tax assessors maps, and monuments such as waterways and streets. As previously noted, while it cannot be assumed that the general public would be aware of the tax assessor's records, it must be concluded that the general public would be aware of the location of monuments such as the Niantic River and named streets.
The description of the perimeter of the proposed area of the zone change starts at the intersection of the Niantic River and the south line of parcel 37 of property map #32.1. The line then proceeds in a southerly direction, approximately 4,600 feet, along the river. The line then generally continues southerly, after detouring around a numbered lot, to a parcel 400 feet west of the terminous of Quarry Dock Road. It then continues southerly, parallel to the Oswagatchie Hills Road, to more lots. The line is then bounded by lots and parcels and proceeds northerly to Latimire Brook. It then goes around another lot, easterly, to Boston Post Road and around other lots to Caulkins Road. At Caulkins Road, the line proceeds southerly. Where Caulkins Road meets River Road, the line begins to follow River Road in a southerly direction to lot 37. From Lot 37, the line continues back to its beginning.
The description found in the notice is far from perfect, but it is adequate to apprise members of the general public of the property involved. A member of the general public, with little technical knowledge, would be able to discern from the notice that the area involved was Oswegatchie Hills, a designation of some significance in the community. The public would also be able to determine that the description described a large area bounded by the Niantic River, parallel with certain public streets and Latimire Brook. The court, therefore, CT Page 6518 determines that the published notice, for the rezoning amendment, is not inadequate for failing to apprise the public of the properties affected by amendment.
2. WHETHER THE PREHEARING NOTICES PUBLISHED BY THE DEFENDANT SUFFICIENTLY NOTIFIED THE PUBLIC OF THE NATURE AND CHARACTER OF THE PROPOSED AMENDMENTS.
The adequacy of the prehearing notice for the rezoning amendment.
The plaintiffs argue that the prehearing notice for the rezoning amendment was inadequate to notify the public of the nature and character of the amendment. Specifically, the plaintiffs argue that the notice failed to indicate where the general public could go to examine the proposed amendment and failed to set out the entire text of the amendment.
The defendant argues that the prehearing notice for the rezoning amendment was adequate to apprise the general public of the proposed changes to the zoning regulations because the notice contained two items: 1) a notice for the proposed Greenway amendment which contained the full text of the proposed rezoning amendment; and, 2) the notice for the rezoning amendment which indicated that the proposed amendment was to rezone the entire RU-120 zoning district to a RU-200 zone.
The Appellate Court has previously stated that the published notice for a proposed zoning amendment does not need not be exact. R.B. Kent Son,Inc. v. Planning Commission, supra, 21 Conn. App. 378. All that is required is constructive notice of the proposed amendments that enables interested parties to understand what is affected by the proposal and gives them an opportunity to protest. Peters v. Environmental ProtectionBoard of Stamford, supra, 25 Conn. App. 164.
As the defendant indicates, the prehearing notice served the dual purpose of advising the public of the proposed Greenway and rezoning amendments and advising the public that a hearing was scheduled for both amendments on July 8, 1999. Based on the text of the entire notice, the public would have known that a hearing was to be held on July 8, 1999 to determine whether the property described in the notice would be rezoned from three-acre to five-acre plots. The fact that the entire text of the proposed rezoning amendment was included in the first section of the notice, applying to the Greenway amendment, but not included in the second part of the notice, which refers specifically to the rezoning amendment, does not change the result. The public was given constructive notice of the text of the rezoning amendment. The court, therefore, determines that the notice for the rezoning amendment was sufficient to CT Page 6519 apprise the public of the nature and character of the proposed amendment.
The adequacy of the notice of the cluster and lot size amendments
The plaintiff claims that the prehearing notices for the cluster and lot size amendments are inadequate because they do not contain the entire text of the amendments. The defendant argues that the notices for the cluster and lot size amendments are adequate because they contain a detailed summary of the proposed changes and indicate where the public can go to examine the entire proposal to amend the regulations.
In Passero v. Zoning Commission, 155 Conn. 511, 514-15, 235 A.2d 660, cert. denied, 390 U.S. 1004, 88 S.Ct. 651, 19 L.Ed.2d 787 (1968), our Supreme Court stated that "[t]he [zoning] statute does not require that the hearing notice contain a summary of the content of the proposed amendment to the regulations. . . . It does, however, require that a copy of the proposed regulation or boundary be filed in the office of the town, city or borough clerk at least ten days before the hearing, so as to permit anyone affected by the proposal to obtain detailed information concerning the proposed amendments."
Because the published notice for the cluster and lot size amendments included a statement that informed the public where the entire proposal for the amendments could be located, the court finds that the notice was adequate to apprise the public of the nature and character of the cluster and lot size amendments.
The adequacy of the notice for the Greenway amendment.
The plaintiffs challenge the adequacy of the notice for the Greenway amendment arguing that the notice is inadequate because it does not contain the full text of the zoning regulation, which would be altered by the amendment, or indicate where the public could examine the unaltered regulation. The defendant argues that the notice for the Greenway amendment was adequate because it set out the entire text of the proposed changes and, therefore, there was no requirement that the notice indicate where the preamended regulation could be found.
This court has found no case law to suggest that a zoning commission is required to set out the entire text of an existing regulation, in its published notice, prior to a hearing regarding an amendment to a zoning regulation. The prehearing notice for the Greenway amendments sets out the entire text of the proposed changes and indicates where the general public can go and look at detailed copies of the proposal. As such, the court finds that the prehearing notice for the Greenway amendment is adequate. CT Page 6520
3. WHETHER THE DEFENDANT'S DECISION IS INVALID BECAUSE IT WAS RENDERED WITH UNNECESSARY HASTE.
The plaintiffs argue, without citing any authority, that the zoning commission acted with unnecessary haste in making its decision. The plaintiffs argue that this unnecessary haste is revealed by the procedural errors the defendant made in the prehearing notices and in its notice of decision. As this court is not required to assess any of the plaintiffs' arguments which are unsupported by legal authority; Mullen Mahon, Inc.v. Mobilmed Support Services. LLC, 62 Conn. App. 1, 8, ___ A.2d ___ (2001); the court will not address this argument.
4. WHETHER THE NOTICE OF PUBLICATION OF THE HEARING. WHICH WAS NOT HELD. DEPRIVED THE DEFENDANT OF SUBJECT MATTER JURISDICTION TO APPROVE THE AMENDMENTS.
The defendant initially attempted to hold a hearing on the Greenway and rezoning proposals on June 17, 1999. In the notice for this hearing, the defendant included reference to the proposed amendments, a metes and bounds description of the affected properties and the map and lot numbers of the properties. Prior to this scheduled hearing, the defendant discovered that there was a defect in the notice because the map and lot numbers were inaccurate. The defendant then decided not to hold the first hearing. On June 25, 1999, and July 5, 1999, the defendant published a corrected notice and later held a hearing on the Greenway and rezoning amendments on July 8, 1999.
The plaintiffs argue that because the wrong properties were listed in the initial prehearing notice the corrected prehearing notice could not confer subject matter jurisdiction on the defendant. The plaintiffs contend that the second notice was not sufficient to cure any public confusion about which properties were affected by the amendments. The plaintiffs also maintain that because the defendant published notice that a hearing would be held on the Greenway and rezoning amendments on June 17, 1999, and a hearing was not held, this action served to further confuse the public. The defendant counters that the second notice conferred subject matter jurisdiction upon it to vote to approve the Greenway and rezoning amendments because the second notice was a valid notice, which cured any defect in the initial notice.
In Lauver v. Planning Zoning Commission, 60 Conn. App. 504, 511,760 A.2d 513 (2000), the Appellate Court held that when an applicant for a special exception permit published an invalid property description in his prehearing notice, the applicant was required to submit a second application and fully comply with the notice requirements of General CT Page 6521 Statutes § 8-3 (a),[4] in order to cure the initial notice defect and confer jurisdiction on the commission to decide the application. Id., 509-11. Lauver states that an applicant is required to publish a prehearing notice which adequately describes the property prior to a hearing and only then does the commission have jurisdiction to entertain the appeal. Based upon Lauver, this court concludes that the second notice published by the defendant for the Greenway and rezoning amendments was sufficient to confer subject matter jurisdiction upon the defendant to vote on the amendments and cure any confusion the initial notice may have caused within the general public.
The plaintiffs also argue that the defendant's failure to hold a hearing on the Greenway and rezoning amendments after it gave the initial invalid notice invalidates the subsequent hearings the defendant held after publishing a valid notice. The court finds this argument unavailing. Similar to Lauver, after publishing a defective notice, the defendant had jurisdiction to decide on the proposed amendments, after it published a valid notice.
Absent a showing of prejudice or confusion, resulting from the first published notice, the defendant was only required to satisfy the requirements of General Statutes § 8-3 (a) in order to give a valid notice for a hearing on the amendments. There is nothing in the record to show any public confusion resulting from the first notice. The court also finds that the defendant published a valid second prehearing notice for the Greenway and rezoning amendments. The court, therefore, finds that the invalidity of the initial notice did not deprive the commission of subject matter jurisdiction to render a decision on these amendments.
5. WHETHER THE NOTICE OF DECISION WAS ADEQUATE TO APPRISE THE PUBLIC THAT IT HAD FIFTEEN DAYS TO APPEAL.
The plaintiffs argue that the notice of decision, filed by the defendant on August 11, 1999, was insufficient to adequately apprise the public and affected property owners of the changes in the zoning regulations.[5] The defendant argues that its published notice of decision is adequate because all a posthearing notice is required to do is alert the public that a change in regulations has been made and that the appeals period has begun to run. The defendant argues that the published notice of decision was sufficient to give the public the required notice.
When reviewing the adequacy of a notice of decision, the court is to be "mindful of the purpose such notice is meant to serve. The right of appeal, if it is to have any value, must necessarily contemplate that the person who is to exercise the right be given the opportunity of knowing CT Page 6522 that there is a decision to appeal from and of forming an opinion as to whether that decision presents an appealable issue. Until the prospective appellant has either actual or constructive notice that a decision has been reached, the right of appeal is meaningless." (Internal quotation marks omitted.) Bridgeport Bowl-O-Rama, Inc. v. Zoning Board of Appeals, supra, 195 Conn. 282.
"It is not essential that a notice of decision expressly state every consideration that might be relevant to any party who might want to appeal the board's decision. It is only necessary to provide notice adequate to ensure a reasonable opportunity within the applicable time constraints to obtain the information required to form an opinion whether or not to appeal." Id., 282. "There is no requirement that the published notice describe the proposed action in detail or with exactitude." Wellesv. East Windsor, supra, 185 Conn. 556. "The adequacy of the notice with regard to the opportunity granted the plaintiff of forming an opinion as to whether that decision presents an appealable issue must be determined from the notice construed as a whole. . . ." (Internal quotation marks omitted.) Bridgeport Bowl-O-Rama, Inc. v. Zoning Board, supra,195 Conn. 282.
As this court has determined that the property description used in the prehearing notice for the rezoning was valid and the same description was used in the notice of decision, the court finds that the property affected by the amendments was adequately described in the notice of decision. A review of the notice also reveals that the public was adequately apprised of the actual changes made by the passage of the Greenway, rezoning, cluster and lot size amendments. Although, this court finds that the notice of decision does not disclose which section of the zoning regulations was amended by the Greenway amendment, the notice is sufficient to apprise an interested member of the public whether an appealable issue exists. This court, therefore, concludes that the notice of decision was adequate to apprise the public of the decision to approve the amendments and apprise the public the appeals period had begun.
6. WHETHER THE DEFENDANT'S REFUSAL TO ALLOW THE PLAINTIFFS A THIRTY DAY CONTINUANCE INVALIDATES THE DEFENDANT'S DECISION TO AMEND THE REGULATIONS.
The plaintiffs argue, without citing any authority, that their due process rights were violated when the defendant, at the hearing on the Greenway amendment, failed to grant them a thirty day continuance, so they could gather more information on the overall impact of the proposed amendment and the effect of the restricted uses allowed by the amendment on the value of the affected properties.[6] The defendant argues that its denial of the continuance did not deprive the plaintiffs of their CT Page 6523 right to be heard, and there is no legal authority holding that a commission must grant a continuance to allow a party to gather more information on the effects of a proposed amendment to the zoning regulations. The defendant further argues that because the plaintiffs have failed to identify what additional information they would have submitted after the continuance, the plaintiffs have failed to show they were prejudiced by the denial of the continuance.
The court recognizes that when a commission is acting in its legislative capacity it has much broader discretion than when it is acting as an administrative board. Central Bank for Saving v. Planning Zoning Commission, 13 Conn. App. 448, 453, 537 A.2d 510 (1988). InConcerned Citizens of Sterling, Inc. v. Connecticut Siting Council,215 Conn. 474, 475, 576 A.2d 510 (1990), a siting council denied the plaintiffs request for a continuance. The Supreme Court emphasized that "[r]equests for continuances invoke the discretionary authority of the adjudicating tribunal. [Gin review every reasonable presumption in favor of the [tribunal's] ruling will be made. . . . The [tribunal's] decision will be reversed only if it represents a gross abuse of discretion. . . . In deciding whether the denial of a continuance is so arbitrary as to violate due process, we have not resorted to mechanical tests but have instead examined closely the particular facts of each individual case." (Brackets in original; citation omitted; internal quotation marks omitted.) Id., 485.
In the present case, during the hearing, the plaintiffs requested "that [the hearing] be continued for thirty days to give [Landmark] an opportunity to respond effectively to what we've heard tonight given the complexity of the proposal particularly with respect to the project which involves the various interplay of the regulations between this and the next two public hearings." Commissioner Formica stated: "Let me share my thoughts with the Commission. . . . This particular public hearing is to amend Section 2A, which [are] the uses allowed in [the RU-120] zone. I don't know that [the plaintiffs] can come forward, or any other developers that can come forward, in the next thirty to sixty or fifteen days, and perhaps really change their level of opposition based on what they have heard this evening. They are either opposed to more limited uses or not. . . . [I] don't know as I'm in favor of continuing the public hearing unless the majority of the people of the public have more to add or have other items to say. We've asked the public a few times as to whether there are more people who would like to speak for or against. . . ." Commissioner Bulmer then added: "We have listened to two and a half hours of testimony on this particular subject. I can't believe that [the plaintiffs'] or anybody else here tonight has any more to this than we know already. I just can't see continuing this hearing any further. I can see we don't vote on it. But, I think CT Page 6524 we should close this." The defendant then voted to close the public meeting on the amendment.
Therefore, the record reveals that the defendant denied the plaintiffs' request for a continuance because members of the public had nothing to add and the defendant believed it had all the information it needed to make a decision. The plaintiffs have failed to submit any evidence that the denial of the continuance prejudiced them and the court finds that the defendant's reasons for the denial of the continuance do not rise to the level of a gross abuse of discretion. The court, therefore, finds that the plaintiff received a full opportunity to be heard and the denial of the plaintiffs' continuance request did not violate the plaintiffs' due process rights.
7. WHETHER THE DEFENDANT'S APPROVAL OF THE AMENDMENTS WAS ARBITRARY. CAPRICIOUS, OR AN ABUSE OF ITS DISCRETION
"The enactment of zoning ordinances is a legislative function, which the court may not disturb unless the commission acted arbitrarily or illegally." Northeast Parking, Inc. v. Planning Zoning Commission,47 Conn. App. 284, 292, 703 A.2d 797, cert. denied, 243 Conn. 969,707 A.2d 1269 (1998). "Acting in such legislative capacity, the local board is free to amend its regulations whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for change." Protect Hamden/North Haven from ExcessiveTraffic Pollution, Inc. v. Planning Zoning Commission, 220 Conn. 527,543, 600 A.2d 757 (1991). When acting in such a legislative capacity, the decisions "reached by [a zoning] commission must be upheld by the trial court if they are reasonably supported by the record. . . ." (Brackets in original.) West Hartford Interfaith Coalition, Inc. v. Town Council,228 Conn. 498, 513, 636 A.2d 1342 (1994).
"Where a zoning agency has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. . . . The [decision] must be sustained if even one of the stated reasons is sufficient to support it. . . . [This] applies where the agency has rendered a formal, official, collective statement of reasons for its action." (Brackets in original.) Bloom v. Zoning Board ofAppeals, 233 Conn. 198, 208, 658 A.2d 559 (1995). "The principle that a court should confine its review to the reasons given by a zoning agency does not apply to any utterances, however, incomplete, by the members of the agency subsequent to their vote. It applies where the agency has rendered a formal, official, collective statement of reasons for its actions." Protect Hamden/North Haven from Excessive Traffic Pollution,CT Page 6525Inc. v. Planning Zoning Commission, supra, 220 Conn. 544. "Where a zoning board . . . does not formally state the reasons for its decision, however, the trial court must search the record for a basis for the board's decision." Bloom v. Zoning Board of Appeals, supra, 233 Conn. 208.
During the July 29, 1999 special meetings on the amendments, prior to the vote on each of the amendments, the defendant stated that the reason[7] for the approval of each of the amendments was because their passage: 1) conformed to the East Lyme Plan of Development; and, 2) is in keeping with the authority granted to the Commission in General Statutes § 8-2. The defendant then voted to pass each of the separate amendments.
A review of the defendant's statement of reasons for the approval of the amendments reveals that the defendant did not articulate any ground that was "pertinent to the considerations the authority was required to apply pursuant to the zoning regulations." Giarrantano v. Zoning Board ofAppeals, 60 Conn. App. 446, 452, 760 A.2d 132 (2000). The defendant merely reiterated that its decision was made in keeping with its statutory and regulatory authority. The stated reason do not indicate which aspects of General Statutes § 8-2 or which of the town's zoning regulations were advanced by each of the separate amendments. The court therefore, determines that the statements do not constitute valid reasons for the defendant's decisions and will search the record to determine if there are valid reasons for the approval of the amendments.
In Paige v. Town Plan Zoning Commission, 235 Conn. 448, 464,668 A.2d 340 (1995), the court observed that while a "[zoning] commission's failure to state on the record the reasons for its actions, in disregard of General Statutes § 8-3, renders appellate review more cumbersome, in that the trial court must search the entire record to find a basis for the commission's decision. . . . [W]e further stated that [i]f any reason culled from the record demonstrates a real or reasonable relationship to the general welfare of the community, the decision of the commission must be upheld. . . ." (Brackets in original; emphasis in original.)
"Courts will not interfere with . . . local legislative decisions unless the action taken is clearly contrary to law or in abuse of discretion. . . . Within these broad parameters, [t]he test of the action of the commission is twofold: (1) The zone change must be in accord with a comprehensive plan . . . and (2) it must be reasonably related to the normal police power purposes enumerated in 8-2." (Brackets in original; citations omitted; internal quotation marks omitted.) ProtectHamden/North Haven v. Planning and Zoning, supra, 220 Conn. 543-44.[8]
"Amendments to zoning regulations, at least by implication, are required CT Page 6526 by General Statutes § 8-2 to be in harmony with the comprehensive plan. . . . The comprehensive plan consists of the zoning regulations together with the zoning map which has been established pursuant to those regulations." Collins v. Planning Zoning Commission, Superior Court, judicial district of New London, Docket No. 546818 (September 1, 1999,Purtill, J.T.R.); see Pierrepont v. Zoning Commission, 154 Conn. 463,466, 226 A.2d 659 (1967) (consideration of zoning map together with the current uses of the property and the applicable zoning regulations cannot be considered inconsistent with the comprehensive plan).
The defendant considered the comprehensive plan in approving theamendments.
There is evidence in the record that the commissioners considered the effect of the proposed zoning amendments on the comprehensive plan and reasonably determined the proposed amendments were in conformance with the plan. For example, at the hearing on the Greenway amendment, Jeanie Davis, the town planner, stated that the three-acre zoning imposed in 1989, in the RU-120 district, was insufficient to take care of the critical resources in the area, as well as outcrops of ledge, steep slopes, extensive wetland and the need for a buffer along the Niantic River. There was also testimony that the proposed amendment was being developed by the planning and zoning commission because "[e]ssentially, we still — we needed to find the trade up mechanism to put our open space where we wanted and target development in the areas that were most suitable."
At the hearing on the lot size amendment, Megan Parulis, the land use coordinator for the town of East Lyme, stated that the reason for the proposed amendments was that "we felt that a better way to go with out objective was to preserve sensitive environmental resources and protect our water quality that the concept of minimal area of buildable land would be more appropriate. It would not penalize those areas that were very suitable for development and would be more appropriate in the areas that did have encumbrances." At that hearing, Parulis observed that "[p]reviously all we had, [was] our minimal lot size requirements that are specified for each zone, RU-40, 40,000 square feet; RU-80, 80,000 square feet; RU-120, 120,000 square feet and those are the only districts to which this would apply. I would also like to note that [the amendment] would not apply to lots that have already been created. We are not going to go back and tell you you have a nonconformity. There would be a date inserted if this were approved so that they would be grandfathered."
At the hearing on the rezoning amendment, Davies presented the commissioners with a copy of the zoning map and the indicated that: "In looking at the properties that are under question, in context with the CT Page 6527 whole town, developed acreage is about 2,700 acres and low density acreage is approximately 600 acres for developed acreage for residential uses." There was also testimony from Davies about "how the town is separated into residential zoning districts and the RU-120 is about 600 acres, more or less; RU-80 is about 6,000 acres, more or less; RU-40 is about 12,500 acres and RU-12, is about 1200 acres with a total of 20,000 acres approximately."
Finally, at the hearing on the cluster amendment, Parulis stated: "One of the things that we are doing, again to offset, if you will, and also to promote development in more appropriate areas is providing some flexibility in design. We're asking for significant amounts of open space. We want that open space to be in large pieces so we want to give some flexibility so that houses can be clustered. If we've got a good chunk of land, we want you to be able to use it to its maximum benefit. . . . And, again, so that we can focus development in the most suitable areas."
Based on this testimony and the zoning maps which were submitted as exhibits this court concludes that the defendant considered the town's comprehensive plan and the effect of the amendments on the comprehensive plan. As such, the defendant's decision to approve the amendments is not arbitrary, capricious, or an abuse of its discretion for this reason.
The defendant's approval of the amendments conformed with its police power.
There is evidence in the record that demonstrates the commissioners properly acted pursuant to their police powers, as provided by General Statutes § 8-2, when they approved the amendments to the zoning regulations. The record adequately shows that the defendant considered evidence of the unique environmental characteristics which existed in the Oswegatchie Hills area with a particular concern for factors such as the overcrowding of land, undue concentration of population, the peculiar suitability for particular uses of the land, in light of the steep slopes and soil types in Oswegatchie Hills, pollution to drinking water supplies, provision of sewage, and control of soil erosion.
With regard to the Greenway amendment, Parulis stated "We looked at the whole town, but clearly Oswegatchie Hills is a unique area and it definitely has a high conservation value because of its proximity to the Niantic River." She emphasized: "We have, however, again because of the potential for erosion and also as a sort of a ridgeline view protection, have prohibited clear cutting except in association with one of the permitted uses." There was also testimony from an East Lyme resident which stated "[i]t's one of the best pieces of property that the Indians roamed over and it hasn't been touched. It will be for the future of our CT Page 6528 children to go down and see ledges go down to the water without having to cross somebody's lawn."
With regard to the rezoning proposal, there was testimony from another East Lyme resident who emphasized: "To say that this particular parcel of land is similar to other parcels of land within the Town of East Lyme with regard to the soil conditions, the coverage of the land and the soil conditions, is to ignore the fact that this particular piece of property is located on the River. Other sites will not have the impact on the Sound and the River that this particular site has. And it is important to maintain the quality of water we have today and not to further degrade it by runoff and fertilizers and whatever runoffs and contaminations are going to come out of a development area. So, [it's] not apples to apples here when you're talking about the land here and the land in other parts of Town."
With regard to the cluster amendment, Parulis stated "we're trying to say where we want the open space and we want the open space to protect as much as possible our resources."
Finally, with regard to the lot size amendment, commissioner Formica introduced a letter by the department of environmental protection that stated: "we also support these proposed provisions which would help insure that development in the coastal portions of the subject zones will occur `in a manner consistent with their capability to support development, preservation or use without significantly discrupting either the natural environmental our sound economic growth.'" Parulis additionally stated the plan takes into account "other nonpoint sources of pollution that are generated through development. Whether that be our fertilizers and other things that would be, soil erosion control and so forth, that would be the result of general development."
The plaintiffs have also argued that the defendants failure to allow it to submit further evidence on the effect of the amendments on the value of the property after a continuance indicates that the defendant failed to look at the economic impact of the amendments as is required under General Statutes § 8-2. A review of the record indicates that the defendant did have information before it that indicated to the defendant that the value of the subject property would be decreased by the amendments. Even if the defendant failed to look at the effect of the amendments on the value of the property, as this is only one factor for the defendant to consider, it does not provide a sufficient basis to find that the defendant's decision was arbitrary, capricious, or in abuse of its discretion.
Based on the record evidence, this court finds that the defendant CT Page 6529 considered the factors set forth in General Statutes § 8-2 and exercised its statutory police powers in deciding to approve the amendments to the zoning regulations. Accordingly, the court will not sustain the appeal on this ground.
 CONCLUSION
For the foregoing reasons, the decision of the defendant Zoning Commission is affirmed.
 Joseph J. Purtill Judge Trial Referee